Argued Dec. 23, 1909, decided Feb. 1, 1910.

FLINN v. VAUGHN.

[106 Pac. 642.]

NAVIGABLE WATERS—OBSTRUCTIONS—RIPARIAN RIGHTS.

1. The damming of a stream, navigable a portion of the year, to create artificial freshets for the purpose of floating logs, may be restrained where the banks of the stream are thereby washed, to the injury of the adjacent landowners.

NAVIGABLE WATERS—RESTRAINING OBSTRUCTION—ESTOPPEL.

2. Neither failure to object to the construction of a dam across a stream to create artificial freshets for floating logs, nor encouragement in such construction by a member of plaintiff's family, will estop plaintiff, an abutting landowner, to sue to restrain maintenance of such dam, where the dam would have been constructed regardless of anything that might have been said in respect thereto.

NAVIGABLE WATERS—OBSTRUCTION—INJUNCTION—DEFENSES.

3. In an action by an abutting landowner to restrain the maintenance of a dam to create artificial freshets for floating logs, it is no defense that this method of floating the logs is less injurious to plaintiff's land than to float them without thus raising the water.

APPEAL AND ERROR—FAILURE TO TAKE CROSS-APPEAL.

4. Though trial *de novo* is had on appeal in equity (Section 555, B. & C. Comp.), respondent cannot urge inadequacy of the award in his favor in the absence of a cross-appeal.

MR. JUSTICE MCBRIDE dissenting.

From Coos: JAMES W. HAMILTON, Judge.

For appellant there was a brief and an oral argument by *Mr. Joseph W. Bennett.*

For respondent there was a brief over the name of *Mr. Austin S. Hammond,* with oral arguments by *Mr. Andrew M. Crawford* and *Mr. Hammond.*

MR. JUSTICE KING delivered the opinion of the court.

This is a suit by D. F. Flinn and N. W. Moon to enjoin William Vaughn and J. A. McDonald from the erection of what is known as "splash dams" in the north fork of the Coquille River, which, it appears, were constructed for the purpose of impounding the waters, and thereby facilitating the floating of logs in the stream. Plaintiffs claim that irreparable injury is caused by the use of these dams, in that the storing of a large quantity of water and suddenly releasing it erodes the banks and carries away large tracts of land, destroys fences, and otherwise entails great damage. The defendants insist that the use of the stream in this manner is essential during a large portion of the year to the proper floating of logs to market, and that the plaintiffs are not substantially injured thereby. On evidence submitted a decree was entered perpetually enjoining defendants from creating artificial freshets by means of such dams, and awarding plaintiffs damages aggregating $350; hence this appeal.

1. The navigability of the stream during a portion of the year is conceded; only the right to place splash dams therein, and use the same in the manner indicated, being questioned. The law governing the use of streams for the purposes complained of may be deemed fully settled

by this court in *Hallock* v. *Suitor,* 37 Or. 9 (60 Pac. 384) ; *Union Power Co.* v. *Lichty,* 42 Or. 563 (71 Pac. 1044), and *Kamm* v. *Normand,* 50 Or. 9 (91 Pac. 448: 11 L. R. A. [N. S.] 290: 126 Am. St. Rep. 698). In the case last cited Mr. Justice BEAN states the rule thus: "A stream which is not such a highway cannot be made one by the use of dams or other artificial means without first acquiring the rights of riparian proprietors. 1 Farnham, Waters, § 139. Nor can a stream, navigable in its artificial condition at certain stages of the water, be made so at other times by artificial means, such as flooding and the like. No one has a right to store water, and then suddenly release the accumulation, and thus increase the natural volume of the stream, and overflow, injure, or wash the adjoining banks, or otherwise interfere with the rights of riparian owners. The riparian proprietor is entitled to the enjoyment of the natural flow of the stream, with no burden or hindrance imposed by artificial means—[citing numerous authorities]. * * Dams, dikes, embankments, and the like may be constructed in or along boatable streams to facilitate their use, but not to the extent of injuring the riparian proprietors by retarding the flow of the water or sending it down in increased volumes to his injury, or at times when the stream would not otherwise be navigable. And this rule is not changed by the fact that a stream cannot be successfully used for logging purposes without such artificial aids to navigation on the ground of necessity." To the same effect, see also, *Trullinger* v. *Howe,* 53 Or. 219 (97 Pac. 548: 99 Pac. 880: 22 L. R. A. (N. S.) 545). In *Hallock* v. *Suitor,* 37 Or. 9 (60 Pac. 384), it was held that no damage was sustained in consequence of the defendants flushing the creek, thereby indicating that dams may be maintained, providing no injury to the riparian proprietors is occasioned thereby. In the case under consideration, however, we think the evidence

clearly discloses substantial injury, and that plaintiffs were damaged by defendants' artificial use in at least the sums awarded.

2. The point relied upon by defendants in the briefs and arguments is that of estoppel, with reference to which it is maintained that plaintiffs made no objection to the institution of the dams, which were placed in the stream at enormous expense. It appears that Ed. Moon, a son of one of the plaintiffs, had some conversation with defendants at the time the dams were constructed, stating, in effect, that he was glad they were being placed in the stream; that he thought they (the plaintiffs), would be benefited, and further signifying a willingness to aid by his labor without charge in the erection of the dams. Aside from the fact that Ed. Moon is not a party to the proceeding, and it is not disclosed that he was acting for his father in such manner as to bind him, it appears from cross-examination of the defendants and their witnesses that the dams were not placed in the stream upon the strength of any representations made by the plaintiffs or others, but that, on the other hand, the obstructions would have been placed there, regardless of anything plaintiffs, or those associated with them, may have said in respect thereto. Our attention is called to the rule laid down in *Curtis* v. *La Grande Water Co.,* 20 Or. 34, 49 (23 Pac. 808 : 25 Pac. 378 : 10 L. R. A. 484) as sustaining defendants' position. Whether this case goes to the extent claimed for it we need not inquire, for it was in part overruled by this court in an opinion by Mr. Justice MOORE in *Ewing* v. *Rhea,* 37 Or. 583, 587 (62 Pac. 790, 792: 52 L. R. A. 140: 82 Am. St. Rep. 783), where, in discussing these principles, it is observed:

"We do not think that upon principle a mere naked license, which is predicated upon an invasion of another's right, and is, in effect, a trespass upon his property, so encourages a party to act upon the faith of the implied

permission as to render it irrevocable, even when money has been expended in improving property under a belief that the uninvited use relied upon will never be interrupted."

And in *Lavery* v. *Arnold,* 36 Or. 84, 86 (57 Pac. 906, 907), after noting "that a parol license to do some act upon the servient estate cannot be revoked after the licensee, relying upon the faith thereof, has expended money or performed labor in making valuable and permanent improvements upon real property," the rule is clearly and concisely enunciated as follows:

"But such license must result from some consideration paid by the licensee or some benefit accruing to the licensor, otherwise a person entitled to the use of water might be deprived thereof by seeing a neighbor constructing a ditch, making no objection thereto until the water was diverted, under an honest belief that he intended to use only the surplus. The parol license sanctioned and upheld by this court is something more than a passive acquiescence, and hence defendant can claim no right to the use of the water by this means."

3. We think it manifest that defendants have not by their proof brought themselves within the rules thus announced. No consideration appears to have been paid for the privileges claimed. No direct benefits are shown to have accrued to plaintiffs by reason of the obstructions nor is it disclosed that defendants built the dams or expended any money on account of anything said or done by either of the plaintiffs. Obviously, therefore, their defense of estoppel is untenable. It is argued, however, that without the dams in the stream and temporary obstructions of the flow defendants could float their logs during only the extreme high water, which would result in logs in large numbers being floated over and left upon plaintiffs' lands, thereby occasioning to their property greater damage than could possibly accrue under the manner employed. Assuming this to be true, it would not follow that defendants are entitled to adopt as a

substitute therefor the methods complained of.  It is for the owner of the land to say whether some system other than the natural flow of the stream may be invoked. The question for determination here, and which is decisive of the controversy, is : Does the method pursued substantially injure the banks of the stream, or otherwise inure to plaintiffs' damage?  To illustrate, it might be that the construction of a railway, with which to transport the logs to market, would be to the advantage of all concerned, including plaintiffs, but it would be no answer in an action for damages for the appropriation of a right of way therefor across their premises for defendants to say less damage would be suffered thereby than would be occasioned by the use of the stream for the floating of logs.

4. Plaintiffs' counsel insist that the damages awarded are very inadequate, and that they should be materially increased here.  No appeal was taken by the plaintiffs; they presumably being satisfied with the decree of the trial court.  But in this connection it is argued that since under Section 555, B. & C. Comp., suits in equity are tried *de novo* on appeal, plaintiffs may insist upon a more favorable decree than that awarded them by the trial court, regardless of whether a cross-appeal is taken.  If the matter were before the court for the first time, there would be much room for argument in support of respondents' contention, but, whether rightfully or wrongfully determined, the question has been so firmly set at rest by previous adjudications of this court that we do not feel justified in further inquiring into the merits of the controversy.  See *McCoy* v. *Crosfield,* 54 Or. 591 (104 Pac. 423) and *Bank of Commerce* v. *Bertrum,* 55 Or. 349 (104 Pac. 963: 106 Pac. 444) where the matter is fully reviewed and decisions by this court are collated on the subject.

It follows that the decree of the court below must be affirmed, and it is so ordered.          AFFIRMED.

MR. JUSTICE MCBRIDE delivered the following dissenting opinion.

While the opinion in this case follows strictly the holding of this court in *Kamm* v. *Normand,* 50 Or. 9, (91 Pac. 448: 11 L. R. A. (N. S.) 290: 126 Am. St. Rep. 698) and *Trullinger* v. *Howe,* 53 Or. 219 (97 Pac. 548: 99 Pac. 880: 22 L. R. A. (N. S.) 545), I do not think that the doctrines announced in those cases are sufficiently broad to be applicable to the situation in a great timber-producing State like Oregon. I am willing to subscribe to the doctrine that a stream, incapable by the natural flow of its waters of transporting logs for any considerable period, cannot be made so by artificial increase of such flow, but, where a stream in its natural state is conceded to be navigable for a part of the year for such purposes I think that the same rules should apply, so far as improvement to facilitate such purposes is concerned, that would obtain upon the Willamette or any other of our large commercial streams. In other words, the fact that a stream is navigable for logging purposes a portion of the time, removes if from the category of private streams to the extent that its natural fitness for public use may be improved by splash dams so long as the waters are not raised beyond the confines of the banks. The banks and bed of the stream are just as much a part of the stream as the water is. There can be no river without banks and bed, and, where the waters serve a public use, the banks and bed which contain such waters should be held subject to the rights of the public. I am aware that this is contrary to the great weight of authority for the reason that our courts have attempted to apply the common law to a situation wherein it is totally inapplicable. In England no river was deemed navigable wherein the tide did not ebb and flow, and such was the common law; but in this country the courts finally cut loose from this doctrine, and decided that it was inap-

plicable to conditions in America, and that the true test of navigability was the fact whether or not a stream could actually be navigated. In other words, the American courts substituted common sense for common law. I think to take our rules in regard to riparian rights on floatable streams from a country which had no floatable streams and no timber to be floated is a greater absurdity than the adoption of the tide-water test as to navigability⁻ would be, and that we ought to adopt the liberal and common-sense rule that one taking land on a stream capable in its natural state of floating logs for a portion of the year, takes it subject to that use and subject to the right of the public to reasonably assist such navigation by artificial means. The strict adherence to antiquated common-law doctrines, entirely inapplicable in this State, enables any curmudgeon who happens to own land along a floatable stream to hamper, delay, and blackmail a great industry and make it impossible for a small proprietor of timber land to get his product to market. He must either burn his valuable trees or sell out to somebody who is able to build a railroad to his timber.

There is no more good reason for applying common-law rules to riparian rights on our floatable streams than there is for applying the English custom of primogeniture or conveyance by fine and recovery to our system of land tenures.