Argued June 27, decided July 11; rehearing denied August 1, 1911.

## NATIONAL FIRE ALARM CO. *v.* CITY OF PORTLAND.

[117 Pac. 285.]

MUNICIPAL CORPORATIONS—CONTRACTS—CONSIDERATION—EVIDENCE.

1. In an action by the owners of a fire alarm designed to furnish private parties with means of giving alarm to prevent defendant city from disconnecting the wires of plaintiff company from the overhead alarm system of the city, evidence *held* insufficient to show that plaintiff gave and the city accepted certain fire alarm boxes as a consideration, or that the plaintiff's action in establishing its alarms constituted any consideration, for an alleged license to make such connection.

MUNICIPAL CORPORATIONS—CONTRACTS—OFFER AND ACCEPTANCE.

2. Where the owners and operators of an electric contrivance designed to furnish private parties with means of giving alarms of fire as an adjunct to the general alarm system of a city, addressed a communication to the board of fire commissioners, stating its desire to install its system, and the record of the board of fire commissioners shows that it was agreed that if, after a thorough investigation by the chief, the system was deemed advisable, it would be adopted, and a later record showed that it was ordered that the board enter into a contract with the fire alarm company for a system of auxiliary alarms, "said contract to be satisfactory when submitted," the action of the superintendent of the city's fire alarm company in connecting such private alarms with the wires of the city did not complete a contract; no written contract having ever been submitted or no time specified or terms made as to the manner of connection or regulation.

MUNICIPAL CORPORATIONS—REPRESENTATIONS BY AGENTS—KNOWLEDGE OF AUTHORITY.

3. A person dealing with the agent of a public corporation must know the authority of such agent, as it is provided by the law establishing the corporation.

MUNICIPAL CORPORATIONS—RIGHT TO USE STREET—LICENSE.

4. An alleged license to a company, owning and operating a contrivance designed to furnish private parties with the means of giving alarms of fire, to connect with the general alarm system, could not be upheld on the claim that such owner had the same right as any citizen of the city to spring an alarm in case of fire and using the city's fire alarm for that purpose, as a citizen has no such vested right.

MUNICIPAL CORPORATIONS—PROPERTY—RIGHT TO USE—LICENSE.

5. Mere acquiescence on the part of city authorities in the act of plaintiff in establishing its possession of and using the city telegraph as an adjunct of its business in operation of a private fire alarm system would not support a license.

From Multnomah: JOHN S. COKE, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by the National Automatic Fire Alarm Company of Oregon against the City of Portland, a municipal corporation, David Campbell, and Charles A. Savarian. The facts are as follows:

The plaintiff corporation is the owner and operator of an electric contrivance designed to furnish private parties with a means of giving alarms of fire as an adjunct to the general alarm system of cities. Desiring to attach its device to the electric fire alarm apparatus of the city of Portland, the plaintiff, on August 9, 1902, addressed this communication to the board of fire commissioners:

"We desire to establish in addition to our automatic apparatus a system of auxiliary fire alarm boxes. To install a plant of this kind so as to give good and efficient service, it is necessary that we shall be permitted to auxiliarize the said alarm boxes, and we respectfully ask permission to install and operate a system of this kind."

This communication was laid on the table at a meeting of the board of fire commissioners held September 2, 1902. On November 5, 1902, the record of the board of fire commissioners shows that "the communication from the National Automatic Fire Alarm Company, laid on the table September 5th, was taken up, and Secretary Goode and Agent Coffee appeared before the board. After a full discussion of the subject-matter of the communication, it was agreed that, if upon thorough investigation

by the chief and superintendent of the fire alarm tele-graph it was deemed advisable, the system of auxiliary fire alarm boxes should be adopted by this department." The next and only remaining record relating to the matter appears in the journal of the commissioners on January 5, 1903, as follows:

"On motion of Commissioner Everding, it was ordered that the board enter into and make a contract with the National Automatic Fire Alarm Company for a system of auxiliary fire alarm boxes, said contract to be satisfactory when submitted."

The board of fire commissioners here referred to was an adjunct of the system of government of the city of Portland under the charter of 1898, embodied in the act to incorporate the city of Portland and to provide a charter therefor and for the repeal of all acts or parts of acts in conflict therewith, filed in the office of the Secretary of State October 17, 1898. Sp. Laws, 1898, p. 101. Under chapter 10, § 87, of that act, the board of fire commissioners had "full, complete and exclusive power and authority on behalf of the city to perform all executive functions of the city in the organization, management and control of the fire department of said city and all powers and the duties incident to or connected with the appointment, regulation and government of the fire department of said city shall be exclusively vested in said board." Further, under section 89, it was "made their duty within the said city of Portland to organize, govern and maintain for effective service the fire department of the city of Portland * * and to provide and maintain suitable apparatus for extinguishment of fires and the protection of property endangered thereby." The board was also required to hold their stated meetings at such times as they should fix upon by vote at a room to be provided for by the common council and to keep a record of all their proceedings. Section 88. The testimony shows that some officer of the

plaintiff company was present at the meetings of the board of fire commissioners above referred to and had full knowledge of the action of the board. No further steps looking to the formation of a contract were ever taken either on behalf of the plaintiff or of the city. Without further order or action of the board, however, the superintendent of the fire alarm telegraph, an employee of the board and afterwards superintendent of the plaintiff company, attached the wires of the city telegraphic fire alarm to the boxes of the plaintiff company. None of these boxes were established in the streets of the defendant city until after the board of fire commissioners had ceased to exist; the charter under which they had authority having been superseded by the present charter voted upon at the election in June, 1902, and which went into effect January 23, 1903. From time to time as its business and patrons increased the plaintiff continued to establish its boxes, until a total of 25 were installed in various parts of the city of Portland, and all of these were connected with the city fire alarm telegraph. The municipality afterwards determined to abandon the overhead wire system in certain districts of the town and to adopt underground conduits. In pursuance of that purpose, the officers in charge of the fire department were proceeding to disconnect the wires of the plaintiff company from the overhead wires and to take down the overhead system. To prevent that action this suit was instituted. In addition to a general denial, the defendants interposed a defense that the board of fire commissioners had no power to enter into a contract such as is alleged by the plaintiff, and, further, that the contract is void, not being in writing as required by the city's charter. The circuit court granted a preliminary injunction, which, after hearing the suit, was made perpetual, and the defendants appealed.    REVERSED AND DISMISSED.

For appellant there was a brief with oral arguments by *Mr. Frank S. Grant,* city attorney, and *Mr. William C. Benbow,* deputy city attorney.

For respondent there was a brief with oral arguments by *Messrs. Kollock & Zollinger* and *Mr. Harry W. Hogue.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The principal question to be determined is whether the acts hereinbefore related amount to a license in favor of the plaintiff which the courts should sustain by perpetual injunction. It is contended on behalf of the plaintiff that it relied upon the action of the board of fire commissioners and in pursuance thereof expended large sums of money amounting to upwards of $15,000 in the prosecution of its business and the installation of its system, and that on account of this it acquired a license which is irrevocable and cannot be disturbed by any action of the city.

It is beyond question that there were negotiations looking to the end sought by the plaintiff. In *Falls City Lumber Company* v. *Watkins,* 53 Or. 212 (99 Pac. 884), Mr. Justice EAKIN says:

"If there were negotiations pending for a way, between Smith and the lumber company, and the flume was constructed before the consummation of the agreement, this was not sufficient to constitute a parol license. When both parties act with knowledge that a license is sought, and the improvement is made before the license is obtained, it will be at the risk of the party making it; but no license can be implied therefrom. The irrevocability of a parol license or the application of equitable estoppel proceeds upon the ground of preventing fraud and depends upon some conduct of the licensor which, if permitted to deny, will amount to fraud upon the licensee. This court has frequently defined an irrevocable license, recognizing three essential elements, viz.: The license must be upon some consideration paid by the licensee or some benefit accruing to the licensor; there must be an oral agreement therefor; and improvements or expenditure in reliance thereon."

We will first inquire whether a consideration was paid by plaintiff or passed between it and the city for the alleged license. Leaving out of the question the fact that there is no record evidence of the acceptance by the city of the boxes, we will examine the oral testimony on that subject. This tends to show that in negotiations about the subject the chief of the fire department argued that the boxes when established in the streets should become the property of the city, and that officers of the plaintiff company acceded to that element of the negotiations. In support of its contention that the city accepted the boxes as its property, the plaintiff introduced in evidence certain pages of the municipal reports of the city of Portland for several years, beginning with the year 1903, showing that the superintendent of the fire alarm telegraph furnished a list of signal boxes which gives "auxiliary fire alarm numbers that are sent in by the Portland Automatic Fire Alarm Company," and the numbers and locations of certain boxes. The plaintiff maintains that this proves that the property in the boxes in question passed to the city, and that it also shows that the city accepted, the boxes as such consideration. However, in the same list of signal boxes are sundry others, said to be owned by the Portland Consolidated Railway Company, the George Ainslie Company, Multnomah County, the Hotel Portland, the Oregon Water Power & Railway Company, and Standard Oil Company. Moreover, the boxes referred to in the report are those of the Portland Automatic Fire Alarm Company, and not the National Automatic Fire Alarm Company. The evident purpose of the reports in question was to give information of places where fire alarms might be turned in, and does not constitute an admission that any of the boxes are the property of the city of Portland. Still further, without reference to the city, it was necessary for the plaintiff company to establish those very boxes for the prosecu-

tion of its business, and they were quite as much for its own convenience as for the convenience of the city.

1. It cannot be said, therefore, that the action of the plaintiff in establishing the boxes constituted any consideration for the alleged license. No other consideration is even intimated in any of the testimony.

Was there an oral agreement for any license? Laying aside the question that the board of fire commissioners had no authority to make a contract, also disregarding the requirement of the charter that the board should keep a record of its proceedings, and considering the plaintiff on the one hand and the city on the other as natural persons doing the same acts before mentioned, it is plain that they contemplated further action before a contract was established, and that nothing more has been shown than mere negotiations.

2. The last utterance of the board was that it enter into and make a contract with the plaintiff for a system of auxiliary fire alarm boxes; "said contract to be satisfactory when submitted." No contract, however, was ever submitted. It is plain from that language that the minds of the parties had not fully and finally met upon any distinct proposition. The plaintiff was not bound to do anything. For that matter, it was left at liberty to withdraw its system of auxiliary fire alarms at its pleasure. No time was specified for the life of such a contract, no terms were agreed upon as to when or in what manner the wires could be connected with the system of the city or how it should be managed or controlled, whether by the city or by the plaintiff. The oral testimony of the witnesses Fliedner, Everding, and Campbell, the two former being fire commissioners and the latter the chief of the fire department, all shows that it was understood and agreed that a written contract should be prepared and submitted by the plaintiff before the transaction should be considered closed.

"Where parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of minds while such agreement is incomplete. Thus, where they intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding upon them until the writing is executed." 9 Cyc. 280; *Wills* v. *Carpenter*, 75 Md. 80 (25 Atl. 415); *Shepard* v. *Carpenter*, 54 Minn. 153 (55 N. W. 906); *Sibley* v. *Felton*, 156 Mass. 273 (31 N. E. 10); *Hodges* v. *Sublett*, 91 Ala. 588 (8 South. 800); *Spinney* v. *Downing*, 108 Cal. 666 (41 Pac. 797); *Ferre Canal Co.* v. *Burgin*, 106 La. 309 (30 South. 863); *Edge Moor Bridge Works* v. *County of Bristol*, 170 Mass. 528 (49 N. E. 918 ); *McDonald* v. *Bewick*, 51 Mich. 79 (16 N. W. 240); *People's R. R.* v. *Memphis R. R.*, 10 Wall. 38 (19 L. Ed. 844).

Within the doctrine of *Falls City Lumber Company* v. *Watkins*, 53 Or. 212 (99 Pac. 884), whatever the plaintiff did, under these circumstances, in establishing its fire alarm system, it did at its own risk. The validity of its license depends upon the act of the superintendent of the city's fire alarm telegraph, afterwards its own superintendent, in connecting the city system with the boxes of the plaintiff. If he had been the agent of some private party with whom the plaintiff had dealt, this act might have been set down as within the apparent scope of his authority, although in excess of his real authority and so have bound his principal; but this rule does not apply to municipal corporations in its unconfined significance.

3. A person dealing with the agent of a public corporation must know the bounds of the authority of such agent, for it is provided by the law establishing the corporation. Moreover, the officers of the plaintiff were present at the meeting of the board of fire commissioners and knew what had transpired. They knew also, or should have known, what the record of the commissioners disclosed on that subject. They had no right, therefore, to rely upon the act of the city's employee in connecting up the

city system with its boxes, an act which was more for the benefit of the plaintiff than of the city.

4. It is claimed that the plaintiff had the same right as any citizen of Portland to spring an alarm in case of fire, using the city's fire alarm telegraph for that purpose; but a citizen has no vested right to use the appliances of the city to send an alarm of fire. The city has the police power to regulate the manner in which fire alarms may be given so far as the appliances organized by the city are concerned. It is the same authority which is exercised by the city in keeping the streets clear adjacent to a fire and giving the right of way to fire engines proceeding to a fire. No right of the plaintiff analogous to the privilege given to a citizen to send in an alarm is violated by any act of the city alleged in the complaint.

5. At best, under all the testimony, all that is shown is a mere acquiescence on the part of the city authorities in the act of the plaintiff in establishing its possession of and using the city telegraph as an adjunct of its business. Within the meaning of *Hallock* v. *Suitor,* 37 Or. 9 (60 Pac. 384), and *Ewing* v. *Rhea,* 37 Or. 583 (62 Pac. 790: 52 L. R. A. 140: 82 Am. St. Rep. 783), such acquiescence will not support a license. The conclusion, therefore, is that the alleged license upon which plaintiff relies is not supported by any consideration or an oral agreement therefor within the rule already laid down by this court; and, generally, equity will not interfere by the drastic remedy of injunction unless the right sought to be protected is clearly proven.

In view of the many elements of uncertainty disclosed by the plaintiff's case, this rule, if no other, would prevent the relief sought by the remedy of injunction.

The decree will be reversed, and the suit dismissed.

REVERSED: SUIT DISMISSED.

Sig. 14

Decided August 1, 1911.

## ON PETITION FOR REHEARING.

[117 Pac. 289.]

Opinion PER CURIAM.

We have re-examined this case upon the whole record and are satisfied with the conclusion reached in the opinion.

The foundation of plaintiff's suit is upon a contract, and not estoppel. Mr. Walker, a witness for plaintiff, only claims that a tentative agreement had been reached to the effect that plaintiff was to be permitted to connect its auxiliary boxes with the city wires—not a specific agreement. He says, "It was an agreement that they (plaintiff) would present a contract"—meaning a contract in writing. That a final settlement of the terms of the agreement was to be had, when the contract was presented, is shown by the record of the fire commission meeting of November 5, 1902, and of January 5, 1903, set out in the opinion. Fliedner, chairman of the commission, testified that the board did not authorize the superintendent of the fire alarm system to connect up the auxiliary system. Permission to do so was held in abeyance until the written contract would be presented and signed. Everding, a member of the commission, is equally positive that no agreement was reached, as is also Wilder, secretary of the commission. Campbell, fire chief, testified that no officer of the fire department was given directions to connect the alarm system of the city with the auxiliary system, and he did not give such orders, although it was understood by himself and the superintendent of the alarm system that it was being connected. Plaintiff's efforts in January, 1905, and again in February, 1910, to secure a franchise for such a right or license as it is claimed had been granted on January 5, 1903, tended strongly to corroborate defendant's contention. According to the testimony of Campbell, at

whose suggestion the boxes were to become the property of the city, the purpose of such contemplated ownership was evidently that the city might control the boxes; but they were neither for the public use nor the use of the city. If the city's ownership of the boxes were now contested, certainly its title would be of a very doubtful character, and in the subsequent efforts to secure the franchise, defendant's ownership of the boxes was not recognized by either plaintiff or defendant. However, plaintiff must be presumed to have acted at its peril in placing the boxes before the contract was effected. It was dealing with a municipal corporation that could act only by and through authorized channels and in a designated manner, of which it will be presumed to have had notice, and the fact that the boxes were connected by the city superintendent of the alarm system, or with knowledge thereof, by some of the other officers of the city, cannot aid plaintiff, as the fire commission or the city is not chargeable with knowledge that plaintiff was acting under a pretended parol contract with the commission. The contract made by the city on April 9, 1907, with the plaintiff, for an automatic auxiliary service at its barn, is in no manner a recognition of the pretended agreement of 1903. It was an independent contract and in no way dependable upon or referable to any further contract. Great weight should be given to the fact that the commission were seeking to have such a contract as was contemplated by the charter and refused to act until it was consummated, and that neither plaintiff nor defendant understood that a contract was concluded between them as shown by the evidence and by the continued efforts to complete such a contract.

The motion is denied.

REVERSED: REHEARING DENIED.