Argued July 9, modified July 20, rehearing denied September 7, 1915.

# DWIGHT v. GIEBISCH.*

(150 Pac. 749.)

**Frauds, Statute of—Parol Contracts for Sale of Interest in Real Estate—Validity.**

1. Where plaintiff, owning land, encouraged defendant to enter thereon and expend large sums of money in opening a quarry on the faith of an oral agreement by plaintiff to let defendant have the rock for a specified sum, defendant performed his part of the agreement, and he could not be dispossessed by plaintiff on the theory that the agreement was not reduced to writing as required by the statute of frauds, and defendant could enjoin plaintiff from interfering with the possession so long as he continued to carry out the contract and pay the specified price for the rock.

[As to what amounts to contracts for the sale of land, within the meaning of the statute of frauds, see note in 102 Am. St. Rep. 230.]

**Tenancy in Common—Contracts With Third Persons—Rights of Co-tenants.**

2. Evidence *held* to sustain a finding that a tenant in common knew that his cotenant orally agreed with a third person for the acquisition by him of the rock on the land, and where the third person on the faith of the agreement expended large sums in opening a quarry without knowledge of the interest of the tenant in common, the latter could not obtain relief in equity against the third person, but his remedy, if any, was against his cotenant for his share of the royalties obtained from the sale.

From Tillamook: WEBSTER HOLMES, Judge.

Department 1. Statement by MR. JUSTICE McBRIDE.

This is a suit brought in the first instance by W. G. Dwight against Giebisch & Joplin and G. W. Kiger to enjoin them from taking stone from a quarry in Tillamook County, and to compel an accounting for stone already taken and timber destroyed on the premises in controversy. The plaintiff alleged, in substance, that he was the owner of a one-half interest in the northeast quarter of the southwest quarter, and the

*Taking possession of real property as part performance to satisfy statute of frauds is discussed in note in 3 L. R. A. 790.

REPORTER.

west half of the southwest quarter, of section 14, and
the southeast quarter of the southeast quarter of sec-
tion 15, township 1 north, range 10 west, with an ex-
ception not necessary to notice here; that said prem-
ises contain a large amount of valuable timber and
stone; that defendants, without permission or author-
ity from plaintiff, or any other person, have gone upon
the land and destroyed and taken away large quan-
tities of timber and stone, diverted the waters of a
natural spring on said premises, and are destroying
the beauty, usefulness and value of the premises; that
the timber so taken amounts to more than 100,000 feet;
and that more than 30,000 yards of soil and 2,500
tons of rock and stone have been removed; that by
reason of the wrongful acts of defendants, plaintiff
has been damaged in the sum of more than $7,500;
that defendants threaten to continue said trespass,
and are actually engaged in so doing, to the injury
of plaintiff; that the defendants have been repeatedly
notified to cease trespassing upon said premises, but
they refuse to do so; that the defendants are insolvent,
and their acts and trespasses are continuous and com-
mitted by many insolvent persons, necessitating mul-
tifarious suits and actions by plaintiff to protect his
rights, and that he has no plain, speedy or adequate
remedy at law.    Then follows a prayer for an injunc-
tion, an accounting and damages.    The defendants
Giebisch & Joplin, by answer, put in issue plaintiff's
ownership in the property, admitted that it contained
a stone quarry, but denied the value of the land for
timber and all other allegations of the complaint, ex-
cept as admitted by their further and separate an-
swer.    They also admitted that plaintiff, on May
19, 1914, notified them, for the first time, that he

claimed an interest in the premises. As a separate defense it was alleged that prior to the 29th day of October, 1913, the government of the United States had initiated the construction of a jetty at the entrance of Tillamook Bay, and that Major Morrow, the engineer in charge, had advertised for bids for furnishing and placing 400,000 tons of rock, in accordance with plans to be supplied by the government; that on the 29th day of October, 1913, George W. Kiger, claiming to be the owner of said premises, forwarded to Major Morrow the following proposition:

"Tillamook, Oregon, Oct. 29, 1913.

"Maj. Jay J. Morrow, Corps of Engineers, U. S. A.,
Portland, Oregon—

"Dear Sir: At the request of the members of the Bay City Port I am herewith dropping you a few lines in regard to rock that the commission thought might be suitable for jetty purposes. The land is located on the Miami River and is described as follows: The west half of the southwest quarter of section 14, township 1 north, range 10 west, and I have herewith agreed and offered to the above-named port stone or rock from the above-described land for one cent per ton for use in what is known as the north jetty of Tillamook Bay and the present jetty now in course of construction on the Nehalem Bay. Same offer is made to any contractor that may do this work or to the U. S. government. Said offer to remain good for six months from this date.

"Very respectfully yours,

"GEO. W. KIGER."

It was further averred that thereupon said engineer placed said letter on file in his office, and permitted said prospective bidders upon the work to examine and use the same as a proposition upon which they could rely; that defendants, relying upon the offer submitted by Kiger as the owner of the property, and

after an examination of the premises, submitted a bid upon the basis thereof, and in making said bid figured and calculated that stone could be obtained from said premises at the price specified in said proposition; that said bid was accepted and defendants were awarded the contract for furnishing 400,000 tons of rock for said jetty; that immediately thereafter defendants visited the premises on two or three different occasions in company with George W. Kiger and discussed with him the proposition submitted by him to Major Morrow, who admitted that it was a *bona fide* proposition, and defendants verbally agreed with him that they would take all the rock required to fill the contract from the premises and pay him one cent per ton therefor, and that in the event any future contracts should be awarded to defendants for extensions or other jetties on said bay, four cents per ton for such additional rock; that Kiger then and there agreed to said proposition, and that a written contract should be drawn up, but that in the meantime the defendants might take possession and proceed with the development of said quarry and the arrangement of camps and machinery. The answer, which is very· lengthy, goes on to show that defendants, relying upon Kiger's promise, proceeded with the development of the quarry, and expended in procuring rights of way, building a railway to it, and quarters for their employees, more than $25,000, and alleges that, after these great expenditures had been made, Kiger refused to sign the contract and repudiated his agreement. Then follow allegations showing irreparable damage, and an allegation that plaintiff is, and was, when Kiger put defendants in possession, the owner of a one-half interest in the premises by a deed made

to him on March 9, 1913; that he was a resident of
Tillamook, an office partner with Kiger, and knew
of his proposition to Major Morrow and to these de-
fendants, of the verbal agreement of Kiger with de-
fendants, and of the large expenditures defendants
were making for improvements and facilities for work-
ing the quarry; that he was also aware that defend-
ants were dealing with Kiger as sole owner of the
property, in ignorance of his own interest therein, and
with such knowledge permitted the defendants to make
these expenditures without notifying them of his
"claim of ownership"; that his silence and failure
to speak were done either with the purpose of deceiv-
ing, wronging and defrauding these defendants, or
he was grossly negligent in not making known his in-
terest in said premises to defendants; that defendants
were at all times ignorant of the actual title and have
been misled by the acts, silence and gross' negligence
of plaintiff; and that plaintiff ought to be and is
estopped from questioning the rights of defendants
in their possession of said premises. The plaintiff
put all these matters in issue by a suitable reply, and
thereafter, by order of the court, Kiger was made de-
fendant and appeared, admitting every allegation of
the complaint and adopting it as his answer in this
cause. For a reply to the answer of Giebisch & Joplin,
Kiger denied, among other matters, that he ever au-
thorized defendants Giebisch & Joplin to take posses-
sion of said premises, but admitted that they were in
possession of the northeast quarter of the southeast
quarter of section 14, township 1 north, range 10
west, although he denied any collusion with plaintiff.
The reply is too voluminous to be here inserted, but
was sufficient to present a complete defense to all the

matters set forth in defendants' answer.  On the trial it appeared that that portion of the tract which defendants claimed to be in possession of was incorrectly described, and defendants obtained leave to amend by inserting the true description, which appears hereinafter in  the findings of the court.   Upon the hearing the court made the following findings, conclusions and decree:

"This cause coming on regularly for trial herein on this the 30th day of November, 1914, at the hour of 10 o'clock A. M., and the trial having concluded on the 2d day of December, 1914, and after having heard all the evidence and argument of respective counsel, the court, being fully advised as to the facts and the law, as facts finds:

"I.    That defendants A. Giebisch and F. Joplin are now, and have been during all the times mentioned in this complaint, partners, doing business under the name of Giebisch & Joplin.

"II.    That the plaintiff and Geo. W. Kiger are the owners of the following described real property, situated in Tillamook County, Oregon, as tenants in common, each owning an undivided half interest therein: his undivided one-half interest in the northeast quarter of the southwest quarter and the west half of the southwest quarter of section 14, and the southeast quarter of the southeast quarter of section 15, in township 1 north, of range 10 west of the Willamette Meridian; excepting all the land in the southwest quarter of the southwest quarter of section 14, township 1 north, range 10 west, lying east of the Miami River, containing 7½ acres, more or less, also excepting all the land in the northeast quarter of the southwest quarter of section 14, township 1 north, range 10 west, lying east of the Miami River, containing 4 acres, more or less; also excepting that portion of the southwest quarter of the southwest quarter and of the northeast quarter of the southwest quarter of section 14, township 1 north, of range 10 west, lying between the county road and the

Miami River. This deed is also made subject to the right of way of the county road as the same is located across the above-described land.

"III. That upon the northeast quarter of said premises there is situated and located a large quantity of rock, and that the defendants Giebisch & Joplin, who are partners, are quarrying rock therefrom for the purposes of using the quarried rock therefrom in the construction of a jetty for the United States government and the port of Bay City at the conjunction of Tillamook Bay and the Pacific Ocean.

"IV. That the said Kiger, prior to the purchase of an interest in the said premises by the said plaintiff, entered into a contract with the defendants Giebisch & Joplin, wherein and whereby they might take from said deposit of stone on said premises rock to be quarried by them at the rate of one cent per ton, government weight, for use in the construction of said jetty, and that said Kiger at said time, nor at any time, disclosed to said defendants that the said plaintiff had or had not acquired any interest in the said premises, or any part therein, and that the said defendants went into possession of the said quarry, opened up the same at an expenditure of about $21,000, and have built a narrow-gauge railroad from Miami Spur in Tillamook County, Oregon, to the said quarry, at a great outlay of money and that after the work had been commenced by the said defendants, upon the opening of the said quarry, said Dwight acquired an undivided one-half interest therein, which he now owns.

"V. That the said Dwight, during all of said times, knew the said defendants had contracted with the said Kiger, as aforesaid, and at all times knew the said defendants were expending large sums of money opening said quarry, and that they were doing so for the purpose of constructing said jetty, and that said Dwight at no time notified them he had any interest in said premises, nor to desist from taking said stone therefrom, nor warned them to cease any operations at said quarry, or to cease the expenditure of money in the opening thereof, or the operating thereof, but passively

permitted them to proceed in the opening of the said quarry and in expending large sums of money in so doing.

"VI.   That after a large amount of money had been expended in the opening of said quarry by the defendants, and same had been opened to a large extent, the plaintiff then notified the defendants Giebisch & Joplin to cease labors in connection therewith and to depart from the said premises.

"VII.   That the said Kiger at all times consented, acquiesced in, and agreed with the defendants Giebisch & Joplin that they might proceed as they have been doing, as aforesaid.

"VIII.   That all acts and things which the defendants Giebisch & Joplin have done in and about said rock quarry have been done under agreement and with the permission of the said Kiger with the knowledge of the said plaintiff.

"IX.   That in order to remove the said stone it was necessary to tear away the soil above same and remove the trees and stumps, and that under the agreement with the said Kiger, the said defendants Giebisch & Joplin were to remove same at their expense, which they have done, and that there is no evidence before the court as to the amount of timber removed, and that the only attempt to produce any evidence as to the amount thereof was hearsay testimony of the plaintiff as to what some timber cruiser had told him, and the only other testimony is that of the defendant Giebisch as to what some party told him.   Therefore the court will not find as to any quantity of timber removed in this cause.

"The court finds as conclusions of law that the defendants had a full, complete, valid and binding contract and agreement with Geo. W. Kiger, who has been brought in as a party to this suit, and who is a cotenant with the plaintiff, giving the defendants Giebisch & Joplin full authority and permission to remove rock from the said quarry, but the contract and agreement and permission did not convey any interest in the premises of the plaintiff and the said Kiger, and that if any

waste was committed it was committed by the defendant Kiger, as cotenant by reason of his contract and agreement with the defendants Giebisch & Joplin, and that the plaintiff has a full, plain and speedy remedy under the State of Oregon and against the defendant George W. Kiger, his cotenant; that the defendants Giebisch & Joplin are not trespassers by reason of having a permit from the defendant Geo. W. Kiger, a cotenant with the plaintiff; that the plaintiff by reason of his conduct and acts as set forth in the findings of fact, and as disclosed by the evidence in this cause, should be estopped from denying the defendants the right to take rock from the said quarry, and that the defendants Giebisch & Joplin should recover their costs and disbursements in this suit off of the plaintiff herein. * * Based on the findings of fact and conclusions of law, heretofore found and filed herein, it is at this time ordered, adjudged and decreed that the plaintiff has failed to prove facts sufficient to make out a *prima facie* case in his behalf herein, and that the suit be, and the same is, for that reason, hereby dismissed. It is further ordered, adjudged and decreed that the defendants Giebisch & Joplin recover off of and from the plaintiff herein their costs and disbursements taxed and allowed at $——, and that execution may issue therefor. * * ''

From this decree plaintiff and Kiger appeal, and defendants also appeal from the failure of the court to decree specific performance as to Kiger and estoppel as to plaintiff.

                    MODIFIED.   REHEARING DENIED.

For appellants there was a brief with oral arguments by *Mr. Sidney S. Johnson* and *Mr. Oak Nolan.*

For respondents there was a brief over the names of *Messrs. Stapleton & Sleight* and *Mr. H. T. Botts,* with an oral argument by *Mr. George W. Stapleton.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1. It is difficult to completely state the issues made on the pleadings on account of their great length, but the foregoing is deemed to present a general outline sufficient for the purposes of this case. While the testimony is contradictory in some particulars, a careful perusal of it satisfies us that the findings of the Circuit Court are justified in every particular. The proposition contained in the letter from Kiger to Major Morrow describes property not taken possession of by the defendants, but this was either an oversight and mistake on the part of Kiger, or a part of a scheme entered into by him and plaintiff to deceive persons who might be disposed to bid on the strength of the inducements there offered. The proposal originated in an investigation on the part of the officers of the city of the capabilities of the premises afterward occupied by defendants as a possible or prospective rock quarry. There was no mistake or misapprehension on the part of Kiger as to the actual physical location of the quarry. The officers of the port knew, and Kiger knew, that the particular piece of ground afterward occupied by Giebisch & Joplin was the one desired for the purposes of a quarry, and the fact that it was misdescribed in his original offer to Major Morrow can make no difference. There can be no doubt from the testimony that he encouraged these defendants to enter the property and expend a large sum of money upon the faith of his agreement to let them have rock for one cent per ton, with a promise that they would pay him a larger price, fixed by defendants' pleadings at four cents per ton, for rock taken for other possible contracts; and by the

plainest principles of equity he cannot now be heard
to say that because the contract, through no fault of
Giebisch & Joplin, was not reduced to writing, it
should be treated as void. The defendants Giebisch
& Joplin having entered upon the premises on the
faith of Kiger's parol agreement and by his consent,
and expended a large amount of money in opening
the quarry, and having fully performed their part of
the agreement, are not to be dispossessed because
their agreement did not come up to the measure re-
quired by the statute of frauds: *Curtis* v. *La Grande
Hydraulic Water Co.,* 20 Or. 34 (23 Pac. 808, 25 Pac.
378, 10 L. R. A. 484); *Kelsey* v. *Bertram,* 63 Or. 563
(127 Pac. 777), and cases there cited. So far, there-
fore, as the defendant Kiger is concerned, the find-
ings of the court and the decree are correct, except
that it does not go far enough and enjoin Kiger from
in any way interfering with the possession of Gie-
bisch & Joplin so long as they continue to carry out
their contract and pay him one cent per ton for rock
taken upon the instant contract and four cents for
rock hereafter to be taken upon other contracts; and
the decree should be corrected in that respect.

2. As to plaintiff we are disposed to adopt the the-
ory of the learned judge below, who heard his testi-
mony and was better able to judge of its credibility
than are we. It is not going too far to say that much
of it seems very improbable. He had been a business
associate of Kiger for several years, being a tenant
in common with him in at least two other parcels of
realty. He occupied the same office with him, and
their desks were not over four feet apart. They had the
same stenographer, and it is evident that their rela-
tions, business and otherwise, were intimate. At the

time Kiger made the offer to Major Morrow plaintiff knew that he owned only a half interest in the land, and about the time that Kiger made his offer to Major Morrow, and during the time the officers of the Port of Bay City were investigating the facilities for obtaining rock for the jetty, he wrote and obtained an option to purchase the other undivided interest in the tract. This option was allowed to lapse, but after Giebisch & Joplin had entered upon the land and begun work and had expended money in preliminary work, rights of way, etc., he completed the purchase, and on March 9, 1914, put his deed upon record. He claims that he never consulted Kiger about the purchase, or informed him that he had an option on the property; that he never heard of any investigation of its capabilities as a quarry, nor discussed that subject with Kiger; that he never knew or heard of the proposal of Kiger to Major Morrow, or of any arrangement between Kiger and Giebisch & Joplin, In fact, he seemed to wish to impress the court with the idea that he supposed the tract was unoccupied, wild land, valuable only for timber until his purchase was completed. He goes so far as to state that he had never seen the land up to the time he bought it. Considering the intimate relations between himself and Kiger, his story is intrinsically improbable. That he would purchase a piece of land which he had never seen and never inquire of his associate, who he knew owned the other half, as to its value, the character of the soil, the amount and quality of the timber, and its other characteristics is not readily to be believed. In fact, the whole story is unlikely, and we are inclined to believe, as did the Circuit Court, that from the beginning there was a conspiracy between him and Kiger

to beguile Giebisch & Joplin into the belief that Kiger owned the whole property, and that when they had expended such a sum of money in opening up the quarry that it would cause them great financial loss to go elsewhere for stone, to extort from them a large price therefor; and the event shows that he carefully waited from March 9th, the date of his deed, until May 28th, allowing Giebisch & Joplin to go on with their improvements and expenditures in fancied security before he notified them of his claims to the property, while in the meantime his confederate, Kiger, was putting off the execution of the agreement with Giebisch & Joplin until they should get so deeply involved in the transaction that it would be ruinous to retreat. Neither of these men have any claims to relief in equity.

"Nothing," observes Lord Camden, "can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting, the court is passive, and does nothing": *Smith* v. *Clay,* 5 Bro. Ch. Rep. 639.

All these are wanting in plaintiff's case. His conduct has been unconscionable, destitute of good faith, and wanting in diligence, and he is thereby estopped, so far as this case is concerned, to assert that Kiger was not the owner of the property; and his remedy, if any, is against his cotenant for his moiety of the royalties obtained from the sale of stone. Let a decree be entered accordingly.

MODIFIED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.