Argued June 12, reversed June 27, 1916.

# FRASER *v.* PORTLAND.

(158 Pac. 514.)

**Municipal Corporations—Construction of Sewer—Equitable Estoppel.**

1. A land owner who, when advised by a city's representative that a sewer was planned across his land, said he would fight it, and afterward found the sewer had been so constructed, *held* not estopped to demand, in injunction suit, removal of the sewer and cancellation of assessment against his land for the cost of the sewer.

**Estoppel—Equitable Estoppel—Acquiescence.**

2. Mere silence or "passive acquiescence" does not by itself create an irrevocable license or produce an estoppel.

**Injunction—Defenses—Inconvenience to Public.**

3. Sometimes equity will decline to enjoin an act, though an admitted legal right has been violated, where intervening public rights would be seriously affected without a correspondingly great advantage to complainant.

**Injunction—Sewers—Defenses—Inconvenience to Public.**

4. Where a land owner, who, when advised by a city's representative that a sewer was planned across his land, said he would fight it, and afterward found the sewer had been so constructed, and demanded injunction to compel removal of sewer, *held* he was entitled to relief, despite the claim of public inconvenience.

**Injunction—Against Maintenance of Sewer—Continuing Wrong.**

5. Equity will enjoin the maintenance of an unauthorized sewer across one's land, since it is a trespass producing a continuing wrong.

**Municipal Corporations—Injunction—Decree.**

6. A municipality was required to remove a sewer constructed without authority across complainant's land, unless, within a reasonable time, right of way therefor was acquired, and to cancel assessment made against complainant for its cost, but without prejudice to any right of reassessment.

[As to waiver of right to injunction by laches in failure to object to improvements, see note in 50 **Am. Rep.** 117.]

From Multnomah: JOHN S. COKE, Judge.

In Banc. Statement by MR. JUSTICE HARRIS.

John J. Fraser owns a five-acre tract of land in Portland. East Twenty-ninth Street extends north and south and ends in a cul-de-sac at the northeast

corner of the Fraser acreage. Siskiyou Street extends east and west and terminates at the east line of the five-acre tract. If East Twenty-ninth Street should be extended across the land owned by Fraser, a junction would be formed with Siskiyou Street, because what is now the east boundary line of the acreage would by such street extension become the east line of the extended street. The City of Portland constructed a sewer along and to the end of East Twenty-ninth Street, and then over the land of plaintiff, on a line which would be within East Twenty-ninth street if extended, to the end of Siskiyou Street, and thence east along that street. While the sewer was in course of construction, but before the work had reached the Fraser land, George A. Ries, a representative of the city, called upon Fraser on September 18, 1912, for the purpose of acquiring a right of way over his premises. The plaintiff was advised of the fact that the city had planned to lay the sewer across his land. During the interview Fraser told Ries that "he would not under any consideration give a right of way, and if the city attempted to put a sewer across there he would fight it." Prior to the interview between Ries and Fraser a proceeding was commenced for the purpose of extending East Twenty-ninth Street across the Fraser land, and according to the testimony of Ries "the city expected the street would be opened in there for a sewer to be constructed across the property." The city engineer explains the delay in seeing Fraser about a right of way by saying that the municipal authorities were "expecting the city would obtain East Twenty-ninth Street as a street." The attempt to open the street was defeated while the sewer was under construction, and although the city was without a right of way when the work of

construction reached the Fraser land, nevertheless a trench was dug and the sewer laid from the end of East Twenty-ninth Street, across the Fraser property, to the end of Siskiyou Street. The land was occupied by a tenant, and Fraser says he first knew of the sewer being laid on his property when, about a month after the talk with Ries, he "went there and found the sewer had been dug and the pipe laid across my place." Fraser did nothing, except to consult a lawyer, until March 21, 1913, when he filed a writing with the city council demanding the removal of the sewer from his land and objecting to an assessment of $683.80 which the city proposed to levy on his property to pay for constructing the sewer. In the following May the plaintiff commenced this suit to restrain the defendant from collecting the $683.80 assessment and to require the removal of the sewer from his premises. A trial resulted in a decree dismissing the suit, and the plaintiff appealed.                REVERSED.

For appellant there was a brief over the names of *Mr. Ralph R. Duniway* and *Mr. J. H. Middleton,* with an oral argument by *Mr. Duniway.*

For respondent there was a brief over the names of *Mr. Henry A. Davie,* Deputy City Attorney, and *Mr. Walter P. La Roche,* City Attorney, with an oral argument by *Mr. Davie.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The city takes the position that the plaintiff is estopped to ask for the removal of the sewer from his land, because he had notice of the intention of the city to construct the conduit across his property, but

notwithstanding such knowledge he neglected to object until after the completion of the improvement, when the rights of the public had intervened. The city cannot defeat the suit, unless an equitable estoppel can be raised as an insurmountable barrier.

When the city planned the improvement, the municipal authorities assumed that by the time they would be ready to lay the sewer, East Twenty-ninth Street would be extended so as to connect with Siskiyou Street. The attempt to open the street was defeated. The defendant made no move to secure a right of way over the Fraser property until after the work of constructing the sewer had commenced, and when the municipality did move it was told by Fraser that if it attempted to lay a sewer across his land "he would fight it." The city, however, laid the sewer in spite of the notice not to lay it. The trench was dug, the pipe was laid, and the conduit was completed across his property, except filling the trench, when Fraser for the first time knew that the sewer was being constructed across his land. It is true that Fraser said nothing more to the city and made no formal objection until about five months afterward, when he served a written notice to remove the sewer.

2. Nearly every element essential for the creation of an equitable estoppel is wanting. Mere silence, or, in the language of previous judicial opinions, "passive acquiescence," does not by itself create an irrevocable license or produce an estoppel: *Lavery* v. *Arnold,* 36 Or. 84, 86 (57 Pac. 906, 58 Pac. 524) ; *Hallock* v. *Suitor,* 37 Or. 9, 12 (60 Pac. 384) ; *Ewing* v. *Rhea,* 37 Or. 583, 587 (62 Pac. 790, 82 Am. St. Rep. 783, 52 L. R. A. 140), expressly overruling *Curtis* v. *La Grande Water Co.,* 20 Or. 34 (23 Pac. 808, 25 Pac. 378, 10 L. R. A. 484) ; *Carson* v. *Hayes,* 39 Or. 97, 107 (65 Pac. 814) ; *Bolter*

v. *Garrett,* 44 Or. 304, 307 (75 Pac. 142) ; *Brown* v. *Gold Coin Min. Co.,* 48 Or. 277, 284 (86 Pac. 361) ; *Shaw* v. *Proffitt,* 57 Or. 192, 202 (109 Pac. 584, 110 Pac. 1092, Ann. Cas. 1913A, 63) ; *National Fire Alarm Co.* v. *Portland,* 59 Or. 409, 417 (117 Pac. 285) ; *Booth-Kelly Lbr. Co.* v. *Eugene,* 67 Or. 381, 383 (136 Pac. 29). The defendant, however, cannot even claim that Fraser remained silent. He told the city in plain words that he objected and would fight any attempt to lay the sewer across his property. The defendant was a trespasser when it constructed the sewer across the Fraser land.

The owner did not tell the city that it could lay the sewer across his property, and consequently it is not necessary to determine whether an express oral permission, if acted upon, would alone be sufficient to create an irrevocable license, although the following cases may appear to give support to such conclusion : *Garrett* v. *Bishop,* 27 Or. 349, 353 (41 Pac. 10) ; *McBroom* v. *Thompson,* 25 Or. 559 (37 Pac. 57, 42 Am. St. Rep. 806) ; *Kelsey* v. *Bertram,* 63 Or. 563, 565 (127 Pac. 777) ; *Dwight* v. *Giebisch,* 77 Or. 254 (150 Pac. 749, 752). Since Fraser did not expressly consent to the improvement, the present controversy does not call for an attempt to distinguish expressions found in the last-mentioned cases from, or to reconcile them with, the following adjudications holding that an oral permission does not result in an irrevocable license, unless a consideration is paid by the licensee or some benefit accrues to the licensor: *Lavery* v. *Arnold,* 36 Or. 84, 86 (57 Pac. 906, 58 Pac. 524) ; *Hallock* v. *Suitor,* 37 Or. 9, 13 (60 Pac. 384) ; *Ewing* v. *Rhea,* 37 Or. 583, 585 (62 Pac. 790, 82 Am. St. Rep. 783, 52 L. R. A. 140) ; *Miser* v. *O'Shea,* 37 Or. 231, 237 (62 Pac. 491, 82 Am. St. Rep. 751) ; *Bolter* v. *Garrett,* 44 Or. 304, 307

(75 Pac. 142); *McPhee* v. *Kelsey,* 44 Or. 193, 200 (74 Pac. 401, 75 Pac. 713); *Sumpter Ry. Co.* v. *Gardner,* 49 Or. 412, 416 (90 Pac. 499); *Falls City Lbr. Co.* v. *Watkins,* 53 Or. 212, 215 (99 Pac. 884); *Flinn* v. *Vaughn,* 55 Or. 372, 376 (106 Pac. 642); *Shaw* v. *Proffitt,* 57 Or. 192, 204 (109 Pac. 584, 110 Pac. 1092, Ann. Cas. 1913A, 63); *National Fire Alarm Co.* v. *Portland,* 59 Or. 417 (117 Pac. 285).

Fraser did not in any way aid in the construction of the sewer, and therefore a license cannot be predicated upon his participation in the enterprise: *North Powder Co.* v. *Coughanour,* 34 Or. 9, 21 (54 Pac. 223); *Bowman* v. *Bowman,* 35 Or. 279, 281 (57 Pac. 546); *Hallock* v. *Suitor,* 37 Or. 9, 13 (60 Pac. 384); *Ewing* v. *Rhea,* 37 Or. 583, 586 (62 Pac. 790, 82 Am. St. Rep. 783, 52 L. R. A. 140). Although the pendency of negotiations for a right of way would not have created a license (*Falls City Lbr. Co.* v. *Watkins,* 53 Or. 212 (99 Pac. 884); *National Fire Alarm Co.* v. *Portland,* 59 Or. 409, 413 (117 Pac. 285), still it should be remembered that the defendant was not even negotiating with the owner when the sewer was laid across the Fraser land. Moreover, there is not a word of evidence to indicate that the city relied upon any omission of the owner, or upon any act done or word said by Fraser: *Flinn* v. *Vaughn,* 55 Or. 372, 376 (106 Pac. 642); *Falls City Lbr. Co.* v. *Watkins,* 53 Or. 212, 215 (99 Pac. 884). The city was a trespasser from the beginning, and it has entirely failed to establish the elements necessary to the creation of an irrevocable license.

3, 4. The defendant argues, however, that another defense is available, if it is compelled to recede from its position that an irrevocable license was created. The remaining defense interposed by the city arises

81 Or.—7

out of the contention that the rights of the public have intervened, and the removal of the sewer would inconvenience many and convenience only one person, and that therefore a court of equity should refuse to heed the prayer of the complainant and leave him to his remedy at law. It is true that sometimes a court of equity will decline to raise its restraining arm and refuse to issue an injunction, leaving the injured party to his remedy at law, even though an admitted legal right has been violated, when it appears that the intervening rights of the public should be taken into consideration, and the issuance of an injunction would cause serious public inconvenience or loss without a correspondingly great advantage to the complainant. The rule now invoked by the city as its last defense was applied in *Booth-Kelly Lbr. Co.* v. *Eugene,* 67 Or. 381 (136 Pac. 29); but there the court dealt with a situation quite different from the one here. Fraser warned the city in time for it to make ample provision for its protection. When the defendant entered the premises of Fraser, it knew that the owner had objected, and that he would continue to object. Fraser did not even tacitly acquiesce, as the plaintiff did in *Booth-Kelly Lbr. Co.* v. *Eugene,* 67 Or. 381 (136 Pac. 29). No deception was practiced, and nobody was deceived. The city relied on nothing except its expectation that East Twenty-ninth Street would be extended. Fraser did all that he could do, and all that could reasonably be asked of him, and he is entitled to have the assessment canceled, and, unless a right of way is legally acquired within a reasonable time, to have the sewer removed.

5. A court of equity is empowered to grant the relief asked by the plaintiff, because the act complained of produced a continuing wrong: *Bernard* v. *Willamette*

*Box & Lbr. Co.,* 64 Or. 223, 233 (129 Pac. 1039);
*Bourne* v. *Wilson-Case Lbr. Co.,* 58 Or. 48, 52 (113
Pac. 52, Ann. Cas. 1913A, 245); *Moore* v. *Halliday,* 43
Or. 243, 247 (72 Pac. 801, 99 Am. St. Rep. 724); 1 High,
Inj. (4 ed.), p. 663.

6. Assuming that it is within the power of the city
to condemn the land, or to extend East Twenty-ninth
Street, or in some lawful manner acquire the right to
maintain the sewer, a decree should be entered re-
quiring the city to remove the drain, unless within a
reasonable time the defendant acquires a right of way
for the sewer, but with directions to the Circuit Court
to ascertain what would be a reasonable time, and can-
celing the assessment attempted to be made against
the plaintiff for the improvement, without prejudice,
however, to any right that the municipality may have
to levy a reassessment: *Iron Works* v. *Oregon R. & N.
Co.,* 26 Or. 224, 234 (37 Pac. 1016, 46 Am. St. Rep.
620, 29 L. R. A. 88); 2 Lewis, Eminent Domain (3 ed.),
p. 1632.

A decree will therefore be entered in conformity
with this opinion.