Argued 16 October; decided 22 October, 1900.

## MISER *v.* O'SHEA.

[ 62 Pac. 491.]

COUNTERCLAIM—MINES AND MINERALS.

1. Plaintiff brought an action for damages, and to enjoin defendants, who owned a placer mine just above plaintiff's, on the same creek, from flooding debris down on plaintiff's claim in the operation of defendants' mine. Defendants filed a counterclaim for damages occasioned by water being backed up on their claim in consequence of a dam built across the creek below defendants' mine by plaintiff. *Held*, that the counterclaim was properly struck out since such damages were in no way connected with the subject of the suit, as required by Section 393, Hill's Ann. Laws, but arose from an independent trespass.

TRESPASS AS A COUNTERCLAIM.

2. A trespass cannot be pleaded as a counterclaim or set-off against another trespass.

SHAM PLEADING.

3. Matter that is not obviously false or evidently pleaded in bad faith is not sham: *The Victorian*, 24 Or. 121, cited.

MINING CLAIM—WHEN STATUTE BEGINS TO RUN.

4. The statute of limitations does not run against the right to a mining claim until the issuance of the patent; in other words, there can be no holding adverse to the United States.

REVOCABILITY OF PAROL LICENSE—MINES.

5. In an action for damages occasioned by defendants flooding debris down on plaintiff's placer mine from defendants' mine, which was situated just above plaintiff's mine, on the same creek, defendants claimed to do so by virtue of a license from plaintiff, and alleged that on the strength of such license they had made valuable improvements on their own claim, but did not show that they paid anything for the license, or that they had not been repaid for their improvements by the operation of their own mine. *Held*, that the license was revocable, and did not constitute a defense to the action: *Hallock* v. *Suitor*, 37 Or. 9, applied.

From Douglas: H. K. HANNA, Judge.

This is a suit by S. W. Miser to enjoin P. H. O'Shea and others from trespassing on certain real property. The transcript shows that the plaintiff is the owner of a placer mining claim in the Green Mountain mining district, Douglas County, Oregon, through which Starveout Creek flows, and that the defendant O'Shea owns the claim above plaintiff's on the creek, the water of which he conveys through a flume to a pipe, and by means of a mining instrument called a "giant," connected therewith, uses

the water to disintegrate the natural bank, thereby securing the gold imbedded therein, the resulting debris being carried in sluices by the returning water to, and deposited in or along the banks of, the creek. The defendants B. D. & H. Dyer, having leased plaintiff's mine, built a dam in the creek about three hundred feet below the O'Shea mine, constructed a flume, and diverted the water so returned, which they used in operating the mine so leased. Other lessees of the plaintiff constructed a reservoir below his dam, whereby the water flowing through the dam was stored and used in the dry seasons in operating mines along the banks of the stream, and by opening a gate in this reservoir the creek was flushed, carrying off the sediment deposited therein. The reservoir, however, having become filled with detritus, O'Shea tried to open the gate to liberate the deposit, but, being unable to do so, he and others, not parties to this suit, tore it out. B. D. & H. Dyer surrendered to plaintiff the possession of his mine, and with his consent cut the dam, but neglected to put a gate therein, and, having taken the defendant Robert Powell into partnership, they leased O'Shea's mine, in operating which there was deposited along the banks of the creek, on plaintiff's premises, debris to the depth of from three to five feet, from fifteen to twenty feet wide, and two hundred and sixty-four feet in length, and to prevent a continuation thereof this suit was instituted.

O'Shea, answering separately, denies the material allegations of the complaint, and avers that since October 1, 1893, he has been in the continuous possession, and since July 26, 1894, the owner, of his said mining claim, and that on ——— 1, 1893, he appropriated three hundred inches of the water of said creek, which he used in a lawful manner in operating his mine. For a second defense he alleges that plaintiff's dam obstructed the flow of water

in the creek, causing it to back up over his mine, thereby preventing the tailings from being carried down the stream, to his damage in the sum of $1,000; that his claim was located, and the water from said creek so appropriated, prior to plaintiff's location and appropriation; and that his use of said water, and the return thereof by flumes to the creek above plaintiff's claim, are the acts of which he complains. For a third defense, he alleges that on October 1, 1893, the plaintiff entered into a contract with him, whereby it was agreed that he was to have the privilege of depositing debris on plaintiff's claim at the place and in the manner complained of. The other defendants deny the material allegations of the complaint, and aver that plaintiff, on May 5, 1894, leased his mine to B. D. & H. Dyer, until it should be sold or worked out, in consideration of which they agreed to dig a ditch, construct flumes, and put in sufficient pipe to mine said claim, paying plaintiff twenty-five per cent. of the gold taken therefrom; and it was stipulated that, if the mine should be sold, plaintiff would pay said defendants two-thirds of the purchase price thereof; that, said defendants having performed their part of the agreement, the plaintiff, on November 6, 1897, in consideration of the cancellation of his lease of the mine and the surrender of the possession thereof, agreed that said defendants should have the right to deposit debris from O'Shea's mine in and below plaintiff's dam. The court sustained a demurrer to O'Shea's second defense, and struck out of the other defendants' answer the averment respecting the leasing of plaintiff's mine, the consideration therefor, and the agreement to pay a part of the purchase price in case of a sale of the leased premises. Replies having put in issue the remaining allegations of new matter in the answer, a trial was had, resulting in a decree for plaintiff, and the defendants appeal.                    AFFIRMED.

For appellants there was a brief over the names of *F. W. Benson* and *Coshow & Sheridan,* with an oral argument by *Mr. O. P. Coshow.*

For respondent there was a brief over the name of *Wm. R. Willis,* with an oral argument by *Mr. Dexter Rice.*

Mr. Justice Moore, after stating the facts, delivered the opinion of the court.

1.  It is contended that the court erred in sustaining the demurrer to O'Shea's second defense.  A counterclaim is one arising out of a cause of action existing in favor of the defendant and against the plaintiff, between whom a several judgment might be had, and, as far as applicable herein, must be connected with the subject of the suit:  Hill's Ann. Laws, §§ 73, 393.  If it be assumed that the injury resulting to said defendant in consequence of the plaintiff's construction of his dam afforded a cause of action upon which a judgment might be rendered, the question to be considered is whether such alleged counterclaim is connected with the subject of the suit.  This suit being for a tort, the injury complained of is the wrong, which consists of the deposit of debris upon plaintiff's mine, and the right, or subject of the suit, is the property which is affected by the alleged trespass :  Bliss, Code Pl. (3 ed.) § 126.  Thus, in *Lovensohn* v. *Ward,* 45 Cal. 8, it was held that the subject-matter of the litigation, in an action of replevin, was the property alleged to have been unlawfully taken by the defendant, who could not, in his answer, allege that the plaintiff had taken from him other property than that mentioned in the complaint, and ask or secure a judgment for its return, although he presented such a case as would have enabled him to recover in an independent action.  The injury alleged to have been sustained by

the defendant does not affect the property described in the complaint, and hence the counterclaim was not connected with the subject of the suit, and no error was committed in sustaining the demurrer.

2.   The action of the court in sustaining the demurrer can also be upheld under the rule that one independent trespass cannot be used as a set-off against another consequent upon it: Waterman, Set-Off (2 ed.), § 136; *Lovejoy* v. *Robinson*, 8 Ind. 399 ; *Shelly* v. *Vanarsdoll*, 23 Ind. 543 ; *Schweizer* v. *Weiber*, 6 Rich. (S. C.) 159 ; *Hart* v. *Davis*, 21 Tex. 411.

3.   It is insisted that the court erred in striking out as sham a part of the answer of B. D. Dyer, H. Dyer, and Robert Powell.   The motion upon which the order complained of was made is predicated upon the ground that the part of the answer assailed was sham, frivolous, irrelevant and redundant.   The averment that plaintiff leased his mine to said defendants, in consideration of which they dug a ditch, constructed flumes, and put in sufficient pipe to operate it, was not false in fact or pleaded in bad faith, and therefore was not sham : *Foren* v. *Dealey*, 4 Or. 92 ; *The Victorian*, 24 Or. 121 (41 Am. St. Rep. 838, 32 Pac. 1040).   Our statute, however, provides that, if irrelevant or redundant matter be inserted in a pleading, it may be stricken out on motion of the adverse party : Hill's Ann. Laws, § .85.   The matter stricken out being clearly irrelevant and redundant, no error was committed in this respect.

4.   It is claimed that defendant's predecessor, having deposited tailings upon that part of the public domain now embraced within plaintiff's mine, thereby appropriated the premises for that purpose, and that plaintiff took his mining claim subject to such prior right.   Such a rule seems to have been adopted in California (*Jones* v. *Jackson*, 9 Cal. 237 ; *O'Keiffe* v. *Cunningham*, 9 Cal. 589);

but we cannot yield our consent thereto ; for no use of the premises, however long continued, can be adverse to the United States, and, as the defendant has not deposited his tailings on the plaintiff's mine for a period of ten years since the United States parted with its title thereto, no claim to continue such use can be predicated thereon : *King* v. *Thomas*, 6 Mont. 409 (12 Pac. 865); *Mayer* v. *Carothers*, 14 Mont. 274 (36 Pac. 182).

5.   It is contended that the evidence shows that the defendant had a license to deposit debris on the mine below his, and that, acting upon the faith of such permission, he, with plaintiff's knowledge, expended large sums of money in purchasing and improving his property, in consequence of which the license had become irrevocable; and, this being so, the court erred in enjoining him from continuing the use of said premises.   O'Shea does not allege that any consideration was paid for the license relied upon, nor does he aver any facts from which an estoppel could be implied, but, the cause having been tried on such theory without objection, the question will be considered.   O'Shea, as a witness in his own behalf, testifies that before purchasing his mining claim the plaintiff told him he had no objection to his having an outlet across his land for dumpings and drainage, saying to the witness, "You can dump where you please;" that, having secured such permission, and relying thereon, he purchased his mining claim, and expended large sums in improving his property, which he would not have done except for such license.   Plaintiff in his testimony makes a general denial of the license so attributed to him.

But, if it be admitted that he consented to the defendants' use of his premises as stated, we do not think the character of the work done in pursuance thereof sufficient to render the license irrevocable.   The evidence fails to show what sum the defendant paid for his mine,

or for the ditch or flume constructed thereon, and, for all that appears from an inspection of the transcript, he may have been amply remunerated for such outlay by the gold realized by operating the mine.   If the defendant, as he testifies, could deposit debris on the plaintiff's mine where he pleased, the result would necessarily be that he could appropriate the surface of the servient estate, if he chose to exercise the right upon which he insists.   This court has adopted the rule that if a party, relying upon the faith of an express parol agreement, make permanent valuable improvements upon an estate, which may inure to the advantage of the owner thereof, the license upon the faith of which the improvements are made cannot be revoked to the prejudice of the party executing it :   *Curtis* v. *La Grande Water Co.* 20 Or. 34 (23 Pac. 808; 25 Pac. 378, 10 L. R. A. 484);   *McBroom* v. *Thompson*, 25 Or. 559 (42 Am. St. Rep. 806, 37 Pac. 57);   *Garrett* v. *Bishop*, 27 Or. 349 (41 Pac. 10);   *Hallock* v. *Suitor*, 37 Or. 9 (60 Pac. 384).   It appears from the the transcript that tailings deposited along the banks of the creek have been worked over several times, yielding sufficient gold to pay for the labor thus expended, so that it may be reasonably inferred that plaintiff would derive a benefit from the deposit of which he now complains ;   but inasmuch as the debris does not constitute a permanent improvement, and is liable to be carried out by the first freshet in the stream, we think the license, if it be conceded that it existed, was revocable.

The defendants B. D. & H. Dyer failed to establish a license to deposit debris from O'Shea's mine on plaintiff's premises ;   for, notwithstanding they settled upon the terms of such an agreement, for which they paid a consideration, the contract, which was to be in writing, was never executed, each party refusing to subscribe his name to a memorandum prepared by the other.   The decree having recognized the defendants' prior right to the use

of the water in the right fork of said creek, it is unnecessary to consider the contention of defendants' counsel respecting such right, or to comment upon the effect of an adverse use of the waters thereof. The defendants assign other errors in the printed abstract, but, not having been insisted upon in their brief, they are deemed waived and the decree is affirmed.        Affirmed.

Decided 23 July, 1900.