Decided 11 June, 1907.

**SUMPTER RAILWAY CO. *v.* GARDNER.**

90 Pac. 499.

Estoppel to Revoke a Parol License Granted for a Consideration.*
A parol license, granted for a consideration, in pursuance of which

---

*Note.—See note to *Hallock* v. *Suitor,* 37 Or. 9, and notes to *Stoner* v. *Zucker,* 113 Am. St. Rep. 301: 7 Am. & Eng. Ann. Cas. 704, and particularly p. 716, where the Oregon cases are analyzed and discussed.

Reporter.

appreciable expenditures of money have been made, cannot be revoked at the caprice of the grantor.

Where a railroad company has extended a spur across a tract of land with at least the knowledge, if not at the request, of the owner, and thereby enabled such owner to market much valuable timber that would otherwise have been inaccessible, it will be permitted to maintain the track until the timber is also removed from an adjoining tract that all parties contemplated should be similarly logged.

From Baker: WILLIAM SMITH, Judge.

Suit by the Sumpter Valley Railway Co. against Charles and Alice Gardner for an injunction, in which it was successful, and defendants appeal.                                          MODIFIED.

For appellants there was a brief and an oral argument by *Mr. Charles Elmer Norton.*

For respondent there was a brief over the name of *John L. Rand,* with an oral argument by *Mr. Vernor Wayne Tomlinson.*

Opinion by MR. JUSTICE MOORE.

This is a suit by the Sumpter Valley Railway Co., a corporation, against Charles H. Gardner and Alice, his wife, to enjoin them from interfering with the operation of a railway spur, and to establish a perpetual right of way therefor across certain land. The facts, constituting the basis of the claim asserted in the complaint, are denied in the answer, which also alleges new matter as a defense. The latter averments are denied in the reply, and on these issues the cause was tried and a decree rendered as prayed for in the complaint, from which the defendants appeal.

The testimony shows that Gardner made a homestead entry on the west half of the northeast quarter, and the west half of the southeast quarter, of section 28, in township 10 south, of range 38 east of the Willamette Meridian. About 30 or 40 acres of this land, consisting of a narrow valley through which a small stream flows, is susceptible of cultivation, and the remainder is hilly, and was originally covered with timber. Gardner built a small house and barn on the land, three acres of which he irrigated with water taken in ditches from the creek. He and his mother, who also owned timber lands in that vicinity, secured from one S. W. Dean, December 8, 1900, a right of way

to extend a railway spur across his premises to their lands, with the privilege of operating cars on such branch for the term of five years. The proof in support of Gardner's right to the homestead was rejected, whereupon his wife, on August 1, 1902, in consideration of $400, secured from the receiver of the local land office a receipt for the premises under a claim that the land was more valuable for timber than for agricultural purposes. Thereafter Gardner stipulated to sell the timber from this land to the Oregon Lumber Company, a corporation, provided a spur from plaintiff's railway, extending from Austin to Baker City, should be constructed to the premises, so that the logs cut thereon could be transported to market. The managers of the Oregon Lumber Co. are also the controlling officers of the Sumpter Valley Railway Co., and, Gardner's offer having been accepted, a line was surveyed through the land hereinbefore particularly described, and the right of way therefor graded the entire distance by Gardner, who was paid for such service by the plaintiff, which placed ties and laid rails on the spur and operated cars thereon. All the saw logs on such land having been cut and marketed, the plaintiff was notified to vacate the premises; but, failing to comply therewith, Gardner tore up a part of the ties and rails, whereupon this suit was instituted.

Joseph Barton, the plaintiff's general superintendent, as its witness, testified that he located the line across Mrs. Gardner's land, and when it was surveyed he had a conversation with her husband, in which the custom was discussed that a person desiring to have a spur built to his land was required to grade the right of way at his own expense, and the railway company, if its agents thought it advisable, would furnish and lay the ties and rails; but, as there was so much timber growing back of the land across which the branch line was desired that could be profitably removed, the plaintiff concluded to pay for the grading. Grant Geddes, the general superintendent of the Oregon Lumber Co., as plaintiff's witness, testified that Gardner stated, when he proposed that a spur should be built, that there was so much timber to come over the line that the railway company

could well afford to pay for the grading, and that when he fur-nished the right of way he was doing his part.   Alluding to Gardner's conversation, this witness was asked:

"Now what, if anything, did he say at the time he proposed the construction of this spur across his premises, with reference to how long the spur was to remain there or otherwise?"

To which he replied:

"He said that the spur would necessarily have to be there for some time, as it would want to bring out all the timber that was behind him.

Q: What did he say with reference to it remaining there for that length of time, or otherwise?

A. He gave me to understand that it was perfectly agreeable for it to remain there that length of time, perfectly agreeable."

An examination of the testimony convinces us that the spur was put in pursuant to Gardner's stipulation that the line of railway should be used, as constructed, until all the timber growing on land situated back of his wife's premises and accessible by the spur could be cut and carried to market on plaintiff's cars.   No agreement, however, to that effect was entered into with Mrs. Gardner; but she knew that the railroad was being constructed, and made no objection thereto.   As a witness in her own behalf, she testified, on cross-examination, that, knowing her husband was cutting the timber from her land, she did not try to prevent him from doing so.   In referring to him, she was asked:

"You knew of his wanting this right of way across the land —wanting this track put in there to get out these logs?"

She replied:

"I knew the track was put in there.

Q. And you knew that he wanted it put in there?

A. Yes, I knew all about that."

It does not appear that Mrs. Gardner expressly authorized her husband to permit the plaintiff to build the spur across her land, but we think it is fairly inferable from the testimony that he was empowered to do so.   While he claimed the premises as a

homestead, he negotiated for a right of way for a spur thereto, and, after his wife secured the land, he at all times treated it as his own by cutting and removing the timber therefrom. This circumstance tends to show that he was authorized to represent her in all matters relating to the premises, and, in view of her conduct, we believe she is equitably bound by his acts.

Whatever the rule may be in other jurisdictions, it is settled in this state that, if a party, for a consideration, makes valuable improvements on the real property of another, pursuant to a parol agreement with the owner thereof, upon the faith of which he has relied, the license cannot thereafter be revoked to the prejudice of the party making the improvements: *Curtis* v. *La Grande Water Co.* 20 Or. 34 (23 Pac. 808, 25 Pac. 378: 10 L. R. A. 484) ; *Garrett* v. *Bishop,* 27 Or. 349 (41 Pac. 10) ; *Bowman* v. *Bowman,* 35 Or. 279 (57 Pac. 546) ; *Lavery* v. *Arnold,* 36 Or. 84 (57 Pac. 906, 58 Pac. 524) ; *Hallock* v. *Suitor,* 37 Or. 9 (60 Pac. 384). The benefit derived by the defendants from the sale of their logs, which they were enabled to market after the spur was constructed, affords a consideration for the parol agreement on the faith of which the plaintiff relied, and, this being so, they will not be permitted to revoke the license during the term for which it was granted. We do not think that such right should be perpetual or exercised longer than necessary to remove the timber contemplated when the agreement was consummated. What that term should be is conjectural, for no direct testimony was given on the subject. It appears, however, that the plaintiff secured from Dean a five years' extension of the right granted to Gardner and his mother, whose authority expired December 8, 1905, and it will be assumed that the time specified in such renewal is ample for that purpose.

The decree will therefore be modified, and one entered here granting the plaintiff a right of way across the defendants' premises until December 8, 1910, 'during which time they will be restrained from interfering in any manner with the operation of the spur as constructed.                                        Modified.