Argued March 24; affirmed April 13, 1937

# WILLSON *v.* WATTS

(66 P. (2d) 1172)

*W. W. Balderree*, of Grants Pass (O. S. Blanchard, of Grants Pass, on the brief), for appellant.

*E. E. Kelly*, of Medford, for respondent.

BEAN, C, J. This is a suit for a permanent injunction against the defendant to enjoin him from the use of the plaintiff's ditch, or any part thereof, for the transportation of water or taking water from the ditch, and for an order directing defendant to disconnect his pipe line at its connection with plaintiff's ditch.

About 1922, defendant, with the consent of plaintiff, and by an oral agreement, connected a one-inch pipe line, with plaintiff's ditch, known as the Watts-Topping ditch, at a point marked "D" on the map of the ditch and premises, and laid the pipe line therefrom to a point marked "E" for defendant's stock and domestic use. About a year later, by agreement between plaintiff and defendant, a two-inch pipe was installed in the ditch and extended for a distance of about fifty feet therefrom to replace the one-inch pipe. At this place the pipe was reduced to one and one-half inches and a tee was constructed so that both parties could use the water. The plaintiff Willson contemplated attaching a pipe and extending the same to his own premises, which were below that point, but never connected the pipe with the tee or made use of the same. Plaintiff and defendant each paid about one-half of $37 for the two-inch pipe, and plaintiff assisted in installing the same. For the purpose of using the water from the pipe, defendant installed plumbing in his house which he estimates cost from $175 to $200, and a distribution system to his outbuildings at an estimated cost of $200. Later defendant installed a pressure water system to supply his house which draws the water from a source other than defendant's ditch, and at times when there is

difficulty with the pressure system he still uses the water from the ditch and pipe for domestic use in his house.

Plaintiff's water for the irrigation of about 33 acres of his land was taken from Williams creek and conveyed in the Watts-Topping ditch to his land. The defendant Watts has a water right for water taken from Water Gap creek, which is fed by a spring and diverted something over half a mile south of the point of diversion of the water pipe mentioned. Defendant constructed a reservoir a short distance from the place of his diversion and the water is conducted by means of a ditch for a short distance to where it empties into the Watts-Topping ditch and is conveyed therein to the pipe line. At the time of arranging for the pipe line connection it was agreed between Willson and Watts that Watts should assist in cleaning the ditch from the point where he emptied his water therein to the point of diversion into the pipe. Watts agreed to empty sufficient water into the Watts-Topping ditch to supply the amount which he took out from the pipe, which he claims that he did; plaintiff complains that Watts used more water for irrigation than he supplied for the Watts-Topping ditch. Except for this difference, there is no contest in regard to the water right of either party but only as to the use of the Watts-Topping ditch and the water pipe connected therewith.

Defendant's testimony shows that up to 1935 he assisted regularly each year in cleaning the Watts-Topping ditch. In 1935 he had no notice from the plaintiff and did not assist in cleaning the ditch in the spring but later that season did work on it. Defendant Watts cultivated a garden of about two acres and irrigated the same with water from the pipe.

Plaintiff made no objections, but acquiesced at all times to defendant using the pipe line, which was connected with the ditch in 1922, until 1934.

Defendant has a ditch running from the place where he empties the water into the Watts-Topping ditch extending north and along near the Water Gap road to within about one-fourth of a mile from his buildings and could transfer water from that point to his buildings and garden at an expense of about $600. For a period of more than ten years defendant has been using the water through said pipe line for irrigation of his garden, watering stock and poultry and a portion of the time for domestic use in the home.

The trial court granted defendant Watts the right to draw water from the Watts-Topping ditch in the amount and quantity which he had theretofore been using the same, with the proviso that the water drawn from said ditch must be supplied by the defendant out of his own independant water right, and, further, that when diverting and drawing water through said pipe line, he should place in said ditch out of his own water rights an equivalent to the amount drawn from the pipe line; further, the court ordered him annually to do his share of cleaning and maintaining the said ditch to a point where his pipe line taps the same to the upper point of diversion of said ditch.

Plaintiff assigns that the trial court erred in finding that the defendant had an irrevocable right to the use of the pipe line from plaintiff's ditch and in decreeing to defendant the right to draw water from plaintiff's ditch in the amount and quantity which he had theretofore been using.

There is not a great difference in the testimony of the parties and there is less difference in the conten-

tions in regard to the law. The main question is in regard to the application thereof.

■ A license like the one granted by plaintiff to defendant becomes irrevocable when the licensee, in good faith and in reliance upon the agreement, makes such valuable and permanent improvements that the revocation thereof would amount to fraud, or the improvements would either be destroyed or materially lessened in value by the revocation of the license: *McBroom v. Thompson*, 25 Or. 559 (37 P. 57, 42 Am. St. Rep. 806); *Shaw v. Proffitt*, 57 Or. 192 (109 P. 584, 110 P. 1092, Ann. Cas. 1913A, 63); *Curtis v. La Grande Water Co.*, 20 Or. 34, 44 (23 P. 808, 25 P. 378, 10 L. R. A. 484); *Kelsey v. Bertram*, 63 Or. 563 (127 P. 777); *Heisley v. Eastman*, 102 Or. 137 (201 P. 872); *Flickinger v. Shaw*, 87 Cal. 126 (25 P. 268, 11 L. R. A. 134, 22 Am. St. Rep. 234); 37 C. J. 292, § 195.

■ Plaintiff seems to contend that the Oregon decisions are to the effect that expenditures of several thousand dollars by the licensee is considered necessary before the doctrine of equitable estoppel will be invoked. This rule apparently is applied where the right granted pertains to an extensive project such as the construction of a large canal, or something of that kind.

The testimony indicates that this ditch passes over the land of one Baird, and that it is to be partially cleaned by defendant each year. Defendant uses a small quantity of water from the pipe, about a miner's inch under six-inch pressure. The use of the Watts-Topping ditch and the use of the small pipe is not of great value.

The amount expended by defendant in connection with the pipe line and ditch compares favorably with the amounts expended in the different cases cited by

the plaintiff. It is true that a small amount could be salvaged from the plumbing in plaintiff's house which he constructed on the faith of the license granted him, but the amount thereof would be of little value. The arrangement between plaintiff and defendant is somewhat similar to a partnership. The work defendant did on the Watts-Topping ditch, to a certain extent, was just as essential as the construction of the ditch in the first instance. The two-inch pipe which plaintiff and defendant installed jointly was partly for the benefit of plaintiff, and the fact that the plaintiff has never seen fit to avail himself of the use thereof does not change the matter.

It would be inequitable and unfair, after the granting of the license referred to, the agreement between plaintiff and defendant, the expenditures made by defendant, and the continuation of the use of the premises for such a long time, with plaintiff's consent, to compel defendant to disconnect his pipe. It is not shown that there is any inconvenience caused the plaintiff by the pipe line. The doctrine of equitable estoppel should be applied and plaintiff should not be permitted to cancel the license.

In the case of *Curtis v. La Grande Water Co.*, supra, the licensee had built a dam and constructed a system of waterworks in the city of La Grande at an expenditure of $8,000 in reliance upon a parol license. The court ruled such expenditure was sufficient to create an equitable estoppel.

In *McBroom v. Thompson*, supra, the right was granted to divert water from the Little Walla Walla river into a ditch across the lands of plaintiff, the licensor. The court there held:

"Where, for a series of years, riparian owners and their grantors have acquiesced in the diversion of a

part of a stream by a person who is not a riparian owner, and such person has yearly aided in keeping the channel of the stream open, and expended money on his farm, which would be worthless without the water, a court of equity will not enjoin a further diversion of the water at the suit of such riparian owners.''

In *Shaw v. Proffit*, supra (at page 212 of 57 Oregon Report), Mr. Justice EAKIN used the following language:

'' 'The cases are practically agreed that on strict common-law principles a bare license is revocable at the will of the licensor, even though executed; but it is held by a very respectable line of authorities, as in the reported case, that on principles of equity the revocation of a license after the licensor has stood by and permitted the licensee to incur considerable expense on the faith of the license would amount to a constructive fraud, working an estoppel in the licensee's favor.' (7 Am. & Eng. Ann. Cas. 706.)

''This court long ago adopted the rule that a parol license cannot be revoked after it has been executed by the licensee, who, in reliance thereon, has expended money in permanent valuable improvements.''

We think the case comes within the rule laid down in 37 C. J. 292, § 195, as follows:

''In some jurisdictions, where the licensee has acted under the license in good faith, and has incurred expense in the execution of it, by making valuable improvements or otherwise, it is regarded in equity as an executed contract and substantially an easement, the revocation of which would be a fraud on the licensee, and therefore the licensor is estopped from revoking it, and the rights of the licensee will continue for so long a time as the nature of the license calls for; this rule is particularly applicable where the licensor joins in the enterprise and accepts the benefits of the licensee's labor and expense.''

Plaintiff cites and relies, among others, upon the case of *David v. Brokaw*, 121 Or. 591 (256 P. 186). In that case the licensee had the privilege of connecting with a pipe line and making use of the water at the rate of $15 annually and failed to pay the stipulated sum in advance. Any water user, under such a contract, failing to pay the stipulated amount would expect to have his water shut off and his license canceled. The case is not like the case at bar.

■ We approve the decree of the circuit court in the instant case, but, in order to save any dispute in the future, we think that the water which the defendant is required to put into the Watts-Topping ditch at the point marked "C" on the map should be measured by an hydraulic engineer, taking into consideration the seepage and waste in conducting the water from that point to the point of diversion of the pipe line, so that it would equal the amount which defendant uses from the pipe line. This can be done with but very little expense, which should be divided equally among the parties, and done by the insertion of a pipe or the arrangement of some kind of an aperture, or by actual measurement of the water. The water master, Tom R. Pearce, who was a witness in the case, is an engineer and, we think, is thoroughly competent to make such measurement. The circuit court is hereby authorized to make provision for such measurement and to approve or disapprove the same and cause such measurement to be inserted in the decree. The case will be remanded to the circuit court for that purpose.

With that suggestion the decree of the circuit court is affirmed. No costs in this court will be awarded to either party.

ROSSMAN, KELLY and BELT, JJ., concur.