Argued June 18, affirmed September 9, 1959
## LUCKEY ET UX *v.* DEATSMAN
343 P. 2d 723

*Tom P. Price,* Portland, argued the cause for appellant. With him on the brief was Joe P. Price, Portland.

*John C. Anicker, Jr.,* Oregon City, argued the cause for respondents. On the brief were Jack, Goodwin & Santos, Oregon City, and Philip A. Levin, Portland.

Before McALLISTER, Chief Justice, and WARNER, O'CONNELL and MILLARD, Justices.

O'CONNELL, J.

The plaintiffs bring this suit under the Uniform Declaratory Judgments Act to obtain a declaration of the respective rights of the plaintiffs and the defendant to the use of certain spring waters arising on the defendant's land. From a decree declaring that plaintiffs were the owners of an easement appurtenant in the defendant's land, the defendant appeals.

The alleged easement arose out of the following circumstances. More than twenty years ago Randall Deatsman, the defendant's predecessor in interest, and William Monner, to whom plaintiffs trace their title, were in possession of adjoining parcels of land. The spring in question was located on Deatsman's land approximately 1,000 yards north of the east-west boundary between the Monner and Deatsman tracts. Monner and Deatsman entered into an oral agreement with respect to the mutual use of the spring waters. It was agreed that Monner would pay Deatsman $50 in cash, contribute $70 toward the cost of the pipe necessary to construct the water system and build two concrete reservoirs on Deatsman's land. The reservoirs were constructed so that the two outlets out of

which the water was to flow to Monner's and Deatsman's lands were placed at the same level. There was no express agreement as to the share of water each was to have, or as to the obligation to maintain the system. Monner testified that "it was just took for granted that each of us had an equal right in it and it was up to us mutually to take care of it." After the system was constructed it was maintained cooperatively and, although there was some conflict in the testimony, it appears that no serious controversy arose between Monner and Deatsman with respect to the use of the water. Monner used it in a small mill on his land and later, in a house which he subsequently constructed. Deatsman used the water for his sheep and for household purposes.

The topography in the vicinity was such that to obtain a gravity flow of water from the spring to the reservoir on Deatsman's land it was necessary to lay the water pipe across Monner's land, then back onto Deatsman's land. It was because of the advantages that this gravity flow through Monner's land would offer to Deatsman that the latter first approached Monner to obtain a right of way over his land. It is to be noted that the oral grant of this right of way over Monner's land constituted a part of the consideration for the oral grant of the water right by Deatsman to Monner.

Subsequently, Monner subdivided his land and sold a part of it to the plaintiffs (this part constituting the dominant tenement) and a part of it to the predecessors in interest of Harold Konnaberg, the present owner. The pipe crossed both of these parcels on its way from the spring to the reservoir. In none of the conveyances in the chain of title from Monner to plaintiffs or to Konnaberg was there any mention of a water

right. Deatsman married the defendant in 1942. He died in 1943.

The present suit was precipitated as a result of the defendant's conduct in replacing the pipe line from the spring to the reservoir and cutting off the flow of water to the plaintiffs' land. The defendant contends that this action was necessary because the plaintiffs were using the water in such a way that defendant was deprived of water for her own use. As the trial judge pointed out, both of the parties violated the agreement; the plaintiffs by tapping into the line at a point between the spring and the reservoir; and the defendant by cutting off the plaintiffs' supply of water. It is not necessary to recite in detail the evidence relating to the parties' misconduct in connection with the use of the water system.

We address our attention to the principal point in the case; viz., did the oral agreement entered into between Monner and Deatsman create an irrevocable right in Monner and his successors in interest to the water from the spring on Deatsman's land.

■ The defendant is correct in asserting that an agreement providing for the creation of a right in one land owner to receive water from the springs located upon the land of another is within the statute of frauds. *David v. Brokaw,* 121 Or 591, 256 P 186 (1927). And so it is clear that the oral agreement in this case is a revocable privilege only, unless it can be brought within some principle which saves it from the statute and requires us to recognize the creation of an irrevocable interest.

■ There is ample authority in our cases for the proposition that an oral agreement for the use of land may, under appropriate circumstances, be enforced

against the promisor. See Note, 31 Or L Rev 242 (1952) for a treatment of the Oregon cases prior to 1952; see also *Powers v. Coos Bay Lumber Co.*, 200 Or 329, 263 P2d 913 (1953); *Shepard v. Purvine,* 196 Or 348, 248 P2d 352 (1952). These cases accept the theory that the oral agreement may be taken out of the statute of frauds by part performance. Although these cases do not always clearly indicate the principle upon which the court rests the part performance doctrine, it is evident that if the promisee has acted in reasonable reliance upon the promisor's promise with respect to the use of his land, the court will enforce the promise. Although we have said in some of our cases that the doctrine of part performance rests upon the theory of equitable estoppel, it would be more accurate to state the doctrine more broadly and recognize that the terms of an oral agreement will be enforced (1) if there is conduct corroborating and unequivocally referable to the oral agreement sufficient to satisfy the policy of the statute designed to minimize perjured claims and the opportunities for fraud, and (2) if there are equitable grounds for enforcing the contract whether those grounds are found in facts establishing the basis for a true estoppel or in facts justifying the avoidance of unjust enrichment or relief from fraud. See Pound, The Progress of Law, 33 Harvard L Rev 929, 933, et seq. (1920).

If these requisites are satisfied an oral agreement assumes the same dignity as a writing and is entitled to be enforced in accordance with its terms. It follows that an easement may be created in such fashion. Although easements normally arise out of executed rather than executory transactions and the doctrine of part performance would not strictly be applicable, 3 Tiffany, Real Property (3d ed) § 834, p 411,

where the easement is orally created it is probably accurate to say that "the parties do not think in terms of something to be conveyed, or even of something to be owned, but in terms of acts which are to be permitted." Conard, Unwritten Agreements For the Use of Land, 14 Rocky Mt. L Rev 294, 299 (1942).

We must determine then whether the circumstances in this case are sufficient to satisfy the requirements of part performance. Obviously, to create an easement the parties must have intended that the use of the servient land was not to be a revocable privilege. An easement is an interest in land not subject to the will of the possessor of the servient estate. 5 Restatement, Property, Servitudes, § 450. The evidence in the present case clearly establishes that intent. The reservoir and pipe lines were constructed under circumstances indicating that the parties regarded the water system as a permanent utility. The subsequent conduct of Monner and Mr. Deatsman in connection with the use and maintenance of the system confirms that interpretation of their understanding.

If there were need for further support for our conclusion we point out that in this case both the servient and dominant owners joined in the construction of the water system over their respective parcels of land, with the object that both would be served by it when it was completed. From this conduct it is reasonable to infer that there were mutual grants by them of easements over their respective lands. Cf. 3 Tiffany, Real Property (3rd ed) p 223-224, citing *Cottel v. Berry*, 42 Or 593, 72 P 584 (1903); *Harrington v. Demaris*, 46 Or 111, 77 P 603, 82 P 14, 1 LRA (NS) 693 (1905).

Pursuant to the oral agreement, Monner built at his

own expense two concrete reservoirs, contributed $70 toward the cost of the pipe, paid an additional $50 to Mr. Deatsman, and orally granted the right to lay a part of the pipeline over Monner's land. Considering the character of the easement, we regard this conduct on the part of Monner as a change in position sufficient to generate an equitable right to the continued use of the servient land. *Shepard v. Purvine,* supra.; *Willson v. Watts,* 156 Or 134, 66 P2d 1172 (1937). It is clear that the conduct in constructing the reservoir and pipe line corroborates and is unequivocally referable to the oral agreement.

The plaintiffs call our attention to the fact that not only did Monner change his position but that in addition a benefit accrued to Mr. Deatsman both in the payment of money and in the advantages which would accrue to him from the use of the water system. It is further pointed out that Mr. Deatsman participated in the development of the water system. These additional circumstances strengthen the plaintiffs' claim. The principle is found in the following quotation from *Heisley v. Eastman,* 102 Or 137, 157, 201 P 872, 879 (1921):

> "* * * After an examination of our own precedents and a consideration of the conclusions announced in them and after an analysis of the reasons assigned for those conclusions, it is our view that neither the direct payment of a consideration nor the accrual of a benefit to the licensor nor participation by the licensor is a *sine qua non,* although these elements when present either singly or in combination may strengthen the right of the licensee to invoke the aid of a court of equity to prevent the perpetration of a fraud upon him."

The promisor's participation in the enterprise has been held to be a factor in finding that an oral agree-

ment may create an easement. *Willson v. Watts,* supra; *Foster v. Foster,* 107 Or 355, 213 P 895 (1923); *Ewing v. Rhea,* 37 Or 583, 62 P 790 (1900); *Hallock v. Suitor,* 37 Or 9, 60 P 384 (1900); *North Powder Co. v. Coughanour,* 34 Or 9, 54 P 223 (1898); *Garrett v. Bishop,* 27 Or 349, 41 P 10 (1895); *Curtis v. La Grande Water Co.,* 20 Or 34, 23 P 808, 25 P 378, 10 LRA 484 (1890). The payment of consideration to the promisor or the accrual of a benefit to him has also been held to be a factor. *Baum v. Denn,* 187 Or 401, 211 P2d 478 (1949); *David v. Brokaw,* 121 Or 591, 256 P 186 (1927); *Foster v. Foster,* supra; *National Fire Alarm Co. of Oregon v. Portland,* 59 Or 409, 117 P 285 (1911); *Shaw v. Proffitt,* 57 Or 192, 109 P 584, 110 P 1092 (1910); *Flinn v. Vaughn,* 55 Or 372, 106 P 642 (1910); *Falls City Lumber Co. v. Watkins,* 53 Or 212, 99 P 884 (1909); *Sumpter Railway Co. v. Gardner,* 49 Or 412, 90 P 499 (1907); *Bolter v. Garrett,* 44 Or 304, 75 P 142 (1904); *McPhee v. Kelsey,* 44 Or 193, 74 P 401, 75 P 713, 78 P 224 (1904); *Miser v. O'Shea,* 37 Or 231, 62 P 491 (1900); *Ewing v. Rhea,* supra; *Hallock v. Suitor,* supra; *Lavery v. Arnold,* 36 Or 84, 57 P 906, 58 P 524 (1899); *Baldock v. Atwood,* 21 Or 73, 26 P 1058 (1891). Only recently this court, following the rule set forth in *Heisley v. Eastman,* supra, has held that an oral easement may arise even where there is neither consideration nor benefit to the licensor, nor participation by him in the undertaking. *Shepard v. Purvine,* supra.

The defendant argues that if an easement was created in Monner it was not an easement appurtenant but an easement in gross only and being personal to Monner was not assignable to the plaintiffs. There can be no doubt that the water to be taken by Monner was to be used in connection with the physical

enjoyment of the land which he was then occupying. The interest is, therefore, appurtenant. The defendant's argument amounts to no more than an assertion that the appurtenant interest was intended to exist only as long as Monner owned the dominant estate. We find nothing in the evidence to support this view. If the defendant intends to assert that a license only was created then, of course, this would negate the existence of an easement of any kind and there would be no point in arguing the distinction between easements appurtenant and easements in gross. For reasons already stated, we have found that an easement and not a license was created in this case.

■ The decree of the lower court provided that the plaintiffs are entitled to the free flow of water from the spring through the water system as originally devised, or its equivalent; that these waters are to be shared equally; that the rights of the parties to the water pass with the land; that each must share in the cost of reasonable upkeep of the water system; that each has the right to enter upon the land of the other for the purpose of inspection, maintenance, repair and replacement of the system; that the parties have the duty to restore the system to working condition; and that each shall hereafter refrain from interfering with the rights of the other in the use of these waters. We think that the decree adequately adjusts the rights of the parties. The decree is, therefore, affirmed.