Argued January 9, affirmed as modified January 29, 1969

ROYER ET UX, *Appellants, v.* GAILEY ET AL,
*Respondents.*

449 P. 2d 853

*Francis F. Yunker,* Portland, argued the cause for appellants. With him on the briefs was J. Robert Jordan, Portland.

*Frederick A. Anderson,* Tigard, argued the cause for respondents. With him on the brief was Thomas J. Moore, Hillsboro.

Before Perry, Chief Justice, and Sloan, Goodwin, Holman and Mengler, Justices.

MENGLER, J. (Pro Tempore).

Plaintiffs appeal from portions of a decree which establishes: (1) the right of defendants Wendland to one-half of the water from a spring on land purchased by plaintiffs under a land sale contract from defendants Gailey; (2) the right of entry upon the land by defendants Wendland to maintain the easement and rights granted them; (3) that the water rights granted to defendants Wendland by the state engineer are subject to the provisions of the decree and are appurtenant to the lands of defendants Wendland and Gailey. Plaintiffs allege that the court erred in: (1) granting an "easement of water rights" to defendants Wendland, and (2) refusing the plaintiffs attorney's fees.

The following circumstances gave rise to the controversy: Defendants Gailey and Wendland owned and occupied adjoining rural properties. The south boundary line of defendants Wendlands' property abutted the north line of defendants Gaileys' property. The line between the properties at the west corner of the common boundary is within a narrow "V"-shaped ravine, gulley, or sharp depression with three rather steep, rising banks. The exact location of the common boundary was not known to defendants Gailey and Wendland, but they were in general agreement on what they assumed to be the boundary. Defendants Wendland had occupied and used their land for farm purposes since 1954. They had developed a source of water on their own land for domestic use and for a nut dryer by building a "springhouse" near a spring on their land and piping the water to the farmhouse

and the nut dryer. There was a discernible flow from the spring the year around. In August or September of 1962, the Wendlands concluded that it would be necessary to increase the flow of water to the springhouse because their water supply was inadequate in the summer and fall months. Because of the uncertainty of the boundary line the Wendlands discussed the matter of the water shortage with Mr. Gailey, who gave his oral permission to enter upon his land as necessary to develop an additional supply of water. The Wendlands cleared out a fallen tree and other debris, cut brush and blackberry vines in the ravine, and excavated through mud to shale where water percolated out of the shale. They placed about 20 feet of clay drain tile in the center of the excavated area. Three four-inch laterals were then placed on each side of the center tile. These laterals were directed to both sides of the assumed boundary line so as to collect water trickling in from the slopes of the ravine and direct it down the center tile to the established cisternlike tile on Wendlands' property. They then filled the excavation with gravel so as to permit the water to percolate around the gravel and into the collection tile. The whole excavation was then covered with dirt and seeded with grass. Additionally, they connected a metal culvert to a concrete culvert under an overlying public highway to direct surface water drainage over the tile area so as to keep the collected water potable. The Wendlands and Gaileys were not certain of the location of the origins of the water, but they believed that the sources were evenly split, that is, half on each side of the assumed boundary. The improvement was done with the full consent, knowledge and approval of Mr. Gailey. In addition to his own labor, Mr. Wendland expended $455.60 for labor and

materials. Mr. Wendland and Mr. Gailey agreed that the water collected was to run to the existing catch basin or cistern on the Wendland land and supplement his water supply to the nut dryer and house.

The agreement between the Wendlands and the Gaileys as to how much of the collected water each could take is at best nebulous. The Gaileys had another source of domestic water and had no present need for the collected water. They could not reasonably foresee, or estimate, the extent of their future need for the water.

Subsequently, on April 17, 1964, plaintiffs purchased the Gailey property under a land sale contract. This sale raised the questions before us: (1) what interest, if any, did the Wendlands have in the property sold, and (2) did plaintiffs have actual knowledge, or are they chargeable with knowledge, of the Wendlands' interest which would cause them to take subject to that interest. Plaintiffs contend that the interest, if any, was a revocable license. Defendants contend that the interest was an appurtenant easement of which plaintiffs had actual knowledge. The trial court's decree cancelled a purported easement from the Gaileys granted and recorded after the date of purchase. Plaintiffs did not appeal this portion of the decree.

■ An agreement which purports to create the right to collect and remove water from the land of another is within the statute of frauds. *Luckey et ux v. Deatsman,* 217 Or 628, 343 P2d 723 (1959); *David et al v. Brokaw et al,* 121 Or 591, 256 P 186 (1927).

■■ This court has accepted the theory that an oral agreement for the use of land may be taken out of the statute of frauds by part performance. *Luckey et ux v. Deatsman,* supra; *Powers et ux v. Coos Bay*

*Lumber Co.*, 200 Or 329, 263 P2d 913 (1953); *Shepard et ux v. Purvine et al,* 196 Or 348, 248 P2d 352 (1952). The clearing of the ravine, the excavating, the installing of collection tile, the backfilling, and the connecting to a permanent, pre-existing catch basin is conduct which was necessary to install the water collection system and which corroborates and is unequivocably referable to the oral agreement. We therefore hold that the recited circumstances of this case are sufficient to satisfy the requirements of part performance and the criteria set out in *Luckey et ux v. Deatsman,* supra.

■ ▪ The agreement of the parties and the accompanying circumstances make it clear that the parties intended the water collection system to be a permanent utility and that the use of the Gailey land was not to be a revocable privilege. The agreement and circumstances created an easement and not a revocable license. There is no doubt but that the water to be taken by the Wendlands and Gaileys was to be used in connection with the physical enjoyment of the land which they were then occupying. The easement therefore is appurtenant to their lands. *Luckey et ux v. Deatsman,* supra. We concur in the finding of the trial court that the easement was appurtenant.

The trial court in effect held that plaintiffs were not bound by the recording of a subsequent written document purporting to create, or memorialize, an easement between the defendants. No appeal is taken from this portion of the decree. There remains for us then to determine whether plaintiffs had, or were chargeable with, actual notice of the existence of the water collection system and the attendant burden upon the land which they were purchasing.

■■ The record is replete with evidence that, prior to the execution of the land sale contract, plaintiffs had knowledge and notice of the existing water collection system in the ravine as it exists at, or near, the common boundary of the respective properties. Plaintiffs personally viewed the premises, and the collection facility was shown and explained to them in some detail. Although this suit is tried *de novo* in this court, the findings of the trial court are entitled to great weight. *Cole v. Fogel et al,* 210 Or 257, 310 P2d 315 (1957). The trial court found that plaintiffs purchased the property with actual notice of the interest of defendants Wendland. We concur in the finding. The trial court found, based on various conversation and other circumstances, that the parties intended that each party have use of one-half of the water from the spring on the northwest corner of the Gailey property but that Wendland could take the excess water available because of nonuse, or partial use by Gailey. We concur generally in that finding except that the evidence establishes that the agreement was to share the collected water rather than the water from one specified spring.

■ The trial court decreed distribution of water from a certain spring. This should be modified to provide for distribution of the water in the catch basin or that leading to the catch basin, collected from the various springs.

■ The plaintiffs seek allowance of attorney's fees under the broad equitable rule announced in *Gilbert v. Hoisting & Port. Engrs.,* 237 Or 130, 384 P2d 136, 390 P2d 320 (1963), cert. den., 376 US 963, 84 S Ct 1125, 11 L Ed 2d 981 (1964). The trial court did not allow attorney's fees. We find nothing in the record which

would bring this case within the equitable principles of *Gilbert v. Hoisting & Port. Engrs.*, supra. We agree with the finding of the trial court.

Costs to neither party.

Affirmed as modified.