Argued and submitted December 17, 1987, affirmed January 11, reconsideration denied March 24, petition for review denied May 2, 1989 (307 Or 719)

CONKLIN,
*Respondent,*

*v.*

KARBAN ROCK, INC.,
fka Karban Konstruction, Inc.,
*Appellant,*

UNITED STATES
NATIONAL BANK OF OREGON, N.A.,
*Defendant,*

*and*

KARBAN ROCK, INC.,
*Defendant - Third-Party Plaintiff - Appellant,*

*v.*

JENKINS,
*Third-Party Defendant - Respondent.*

(86-0096C; CA A43302)

767 P2d 444

Gary Roberts, Portland, argued the cause for appellant. With him on the briefs was Grebe, Gross, Peek, Osborne & Dagle, P.C., Portland.

Charles E. Corrigan, Portland, argued the cause for respondent Edwin L. Conklin II. E. Joseph Dean, Portland, argued the cause for respondent Jean C. Jenkins. With Charles E. Corrigan on the brief were O'Donnell, Ramis, Elliott & Crew, Portland, and Susan P. Graber and Stoel, Rives, Boley, Jones & Grey, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant Karban Rock (Karban) appeals a judgment dismissing its counterclaims against plaintiff, Conklin, and its claims against third-party defendant, Jenkins, for failure to state claims. ORCP 21A(8). Alternatively, it seeks reversal or reduction of the award of attorney fees to Conklin and Jenkins. We affirm.

We accept the pleaded facts as true. *Franson v. Radich,* 84 Or App 715, 717, 735 P2d 632 (1987). In 1977, Karban entered into a written lease with Jenkins which allowed Karban to apply for a conditional use permit to quarry rock on a 15-acre parcel owned by Jenkins. In 1980, that lease was amended to increase the size of the leased premise to 20 acres. Beginning in 1980, Conklin led the opposition to Karban's attempts to obtain the conditional use permit. Washington County granted Karban the permit in February, 1981. The Land Use Board of Appeals reversed that decision in November, 1981, and we affirmed LUBA. *Shadybrook Environ. Protect. Assn. v. Wash. Co.,* 61 Or App 474, 658 P2d 1168, *rev den* 294 Or 682 (1983). The case was remanded to the county, which took no further action on the application. In July, 1984, the Land Conservation and Development Commission acknowledged the comprehensive plan for Washington County, which allowed rock quarrying as a conditional use on plots of land of at least 40 acres.

According to Karban's allegations, it and Jenkins thereafter entered into an oral lease for an additional 20 to 40 acres of land adjacent to that covered by the original lease. The new, or modified, lease was to have a term in excess of one year, and all of its other terms were to be identical to the existing lease. The precise location and amount of land was to be determined solely by Karban. Jenkins agreed to aid Karban in applying for a permit to quarry on the expanded 40 to 60 acre site. After Karban made its oral agreement with Jenkins and, in reliance on it, incurred additional attorney fees in pursuing an application for the enlarged site, it did not pursue other profitable rock quarry opportunities and terminated its effort to obtain a conditional use permit to quarry the original 20-acre site.

Karban alleged further that, before Jenkins had

executed a new written lease with Karban, she notified Karban that the lease was terminated for failure, among other things, to make the minimum royalty payments required by the lease. She then sold the land to Conklin, who had knowledge of the written lease and the alleged oral modification and who offered more money than Jenkins was then receiving from Karban. Jenkins sold with knowledge that Conklin would breach the Karban lease.

Conklin then filed this action for a declaration that the written lease for the original 20 acres was terminated because of Karban's failure, among other things, to make timely lease payments. Karban denied that the lease was terminated and filed a counterclaim against Conklin, alleging breach of the oral lease and intentional interference with contractual relations, for which it sought specific performance or damages. It also filed a third-party claim against Jenkins for specific performance of the lease as modified orally or damages for breach of contract. All of the counterclaims and third-party claims were dismissed, and attorney fees were awarded to both Conklin and Jenkins payable by Karban. A final judgment was entered pursuant to ORCP 67B. This appeal concerns only Karban's counterclaims and third-party claims.

First, we consider the breach of contract claims. Karban admits that its oral contract with Jenkins falls within the Statute of Frauds. ORS 41.580. However, it contends that the facts alleged are sufficient to prevent Jenkins and Conklin from relying on that defense under two theories: (1) equitable estoppel as to the law actions; and (2) part performance as to the equitable ones.

Although equitable estoppel may be raised to defeat the Statute of Frauds, *Engelcke v. Stoehsler,* 273 Or 937, 544 P2d 582 (1975), it is not clear from the cases what facts must be alleged to succeed. Generally,

> "[t]o constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act

upon it." *Donahoe v. Eugene Planing Mill,* 252 Or 543, 545, 450 P2d 762 (1969).

Two early cases dealt with the specific question of whether reliance on an oral promise to execute a lease can furnish the foundation for equitable estoppel. In *Dechenbach v. Rima,* 45 Or 500, 504, 77 P 391, 78 P 666 (1904), the court stated:

> "Estoppel *in pais* arises from misrepresentation or concealment of a material fact, and rests on the ground that it would be a fraud to a party to assert what his previous conduct has denied when others have acted on the faith of that denial. Such an estoppel can rarely arise unless it has reference to a present or past state of things, or relates to an intended abandonment of an existing right; and it has no application to a mere breach of a promise or covenant relating to the future[.]* * * Now, in the case in hand, there was no false representation or concealment of any fact by plaintiff that induced the defendant to purchase Lake's business. The only contention is that in making such purchase he relied on the verbal promise of the plaintiff that, if he would buy the business, the plaintiff would thereafter execute to him a lease of the premises for more than one year. This contract was void by the statute of frauds, and is therefore void for all purposes."

Similarly, in *Ramsey v. Wellington Co.,* 114 Or 355, 369-71, 235 P 297, 301-02 (1925), the court refused to estop the defendant from asserting a Statute of Frauds defense to an alleged oral contract to lease real estate for more than one year, where the plaintiff allegedly detrimentally relied on the defendant's promise to execute the lease. The court followed *Dechenbach* in holding that some *factual* misrepresentation beyond the contractual promise itself must be relied on in order to invoke an equitable estoppel to assert the Statute of Frauds.

Two more recent cases, which Karban contends apparently overrule, *sub silentio, Dechenbach* and *Ramsey* are distinguishable. In *United Farm Agency v. McFarland,* 243 Or 124, 411 P2d 1017 (1966), the seller of land and a real estate broker orally agreed that, if the seller would sell the land on less advantageous terms than the seller had previously demanded, the broker would take its commission in yearly installments, rather than in the lump sum to which it was entitled under a written contract. When the broker sued the seller for the full commission under the written contract, the

seller asserted the oral agreement as a defense. The broker relied on the Statute of Frauds. In holding that it was estopped from doing so, the court relied on language from *Neppach v. Or. & Cal. R. R. Co.,* 46 Or 374, 397, 80 P 482 (1905):

> "The statute of frauds may not be invoked to perpetuate a fraud, nor will a party be permitted to insist upon the statute to protect him in the enjoyment of advantages procured from another, who, relying on an oral agreement, has acted and placed himself in a situation in which he must suffer wrong and injustice if the agreement is not enforced."

The court said that the seller had sold his property at a lower price and on less favorable terms than he would have done without the broker's agreement to modify the contract to accept its commission in six annual installments. If the seller had not agreed to sell, the broker would not have received a commission, at least at that time. In other words, the broker gained an advantage by making the oral promise on which the seller relied to his detriment. For that reason, the broker was estopped from relying on the Statute of Frauds.

The same is true in *Stevens v. Good Samaritan Hosp.,* 264 Or 200, 504 P2d 749 (1972), in which the defendant hospital had promised the plaintiff that, if he accepted a job with it, it would guarantee his continued employment for 15 years. In reliance on that promise, the plaintiff abandoned a profitable business of his own to accept the hospital job. When the hospital terminated his employment after five years, he sued for damages. Relying on the *Neppach* language[1] that one may not invoke the statute to perpetrate a fraud and thereby gain an advantage over one who relied on the promise to his detriment, the court held that the hospital was equitably estopped to rely on the Statute of Frauds.

Here, Jenkins gained nothing from the alleged promise. It may be, as Karban alleges, that abandonment of its

---

[1] The court quoted with approval from 3 Williston, *Contracts* (3d ed), § 533A, at 796:

" 'Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the Statute of Frauds. This is based upon the principle established in equity, and applying in every transaction where the Statute is invoked, that the Statute of Frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme * * *.' " 264 Or at 204.

application to quarry the original 20-acre plot and the expenditure of money for attorney fees in pursuing a new permit were detrimental to it; however, those actions did not inure to the benefit of Jenkins. Nothing analogous to fraud is alleged. For those reasons, *Stevens v. Good Samaritan Hosp., supra,* and *United Farm Agency v. McFarland, supra,* do not detract from the authority of *Dechenbach v. Rima, supra,* and *Ramsey v. Wellington Co., supra,* both of which are squarely in point.[2] Accordingly, neither Jenkins nor Conklin is estopped from relying on the Statute of Frauds as a defense to Karban's damage claims for breach of the alleged oral contract.

■  On its claims for specific performance, Karban seeks relief from the Statute of Frauds on the ground that its actions constituted part performance of the alleged contract. The circumstances in which part performance may avoid the Statute of Frauds were enunciated in *Luckey et ux v. Deatsman,* 217 Or 628, 633, 343 P2d 723 (1959):

> "[T]he terms of an oral agreement will be enforced (1) if there is conduct corroborating and unequivocally referable to the oral agreement sufficient to satisfy the policy of the statute designed to minimize perjured claims and the opportunities for fraud, and (2) if there are equitable grounds for enforcing the contract whether those grounds are found in facts establishing the basis for a true estoppel or in facts justifying the avoidance of unjust enrichment or relief from fraud."

In the Oregon cases in which part performance of a contract involving land has been found, the party asserting part performance has exercised unequivocal dominion over the interest in land allegedly granted to him. In *Luckey,* the plaintiff built a reservoir on the easement allegedly granted to him. In *Royer v. Gailey,* 252 Or 369, 449 P2d 853 (1969), a similar water-collecting structure was built on the land. Such a physical improvement to land "corroborates and is unequivocally referable to the oral agreement." Karban's dropping its application to quarry the 20-acre site and hiring a lawyer to

---

[2] In *Engelcke v. Stochsler, supra,* the court held that the lessor was estopped from relying on the Statute of Frauds as a defense to a claim for the breach of an oral lease where the lessee alleged and proved that, in reliance on the oral lease, he had planted crops on the leased property and had paid the lessor the agreed rental of one-third of the crop proceeds for a period of two years. As in *Stevens v. Good Samaritan Hosp., supra,* and *United Farm Agency v. McFarland, supra,* both of which it expressly relies on, the lessee's actions benefitted the lessor.

apply for an application to quarry the larger site are not unequivocally referable to the alleged oral contract for the modified lease.

■ Futhermore, even if Karban's actions were unequivocally referable to the alleged contract, those actions were of no benefit to Jenkins.[3] Therefore, the same equitable considerations are not present here as in *Luckey et ux v. Deatsman, supra,* and *Royer v. Gailey, supra.* In both of those cases, failure to uphold the oral contracts would have resulted in a windfall to the party asserting the Statute of Frauds, because the opposing parties had made valuable improvements to their land. We hold that Karban's complaint failed to allege the requisites for part performance.[4]

Accordingly, the claims for damages for breach of contract and for specific performance of the contract were properly dismissed.

■ We turn to Karban's contention that the alleged actions by Conklin are sufficient to state a claim for intentional interference with contractual relations. In *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 582 P2d 1365 (1978), the court held that, in order to make out a claim for intentional interference with contractual relations, the plaintiff must allege an improper motive or improper means beyond the fact of the interference itself. As the court put it more recently in *Straube v. Larson,* 287 Or 357, 361, 600 P2d 371 (1979):

"[P]laintiff must not only prove that defendant intentionally interfered with his business relationship but also that defendant had a duty of non-interference; i.e., that he interfered for an improper purpose rather than for a legitimate one, or that

---

[3] Karban argues, but does not allege, that its application for 40 acres would have benefitted Jenkins, because, in her deed to Conklin, she reserved a one-half interest in all minerals, including rock, in the property. It attached a copy of the deed to its memorandum in the trial court. Although ORCP 21A permits facts not in the pleading to be submitted to the court if the motion asserts defenses (1) through (7), it does not do so with respect to a defense under (8). In any event, the grantee in the deed was granted the sole right to determine all matters related to the removal and leasing of the minerals.

[4] Conklin and Jenkins also argue that the oral contract alleged by Karban is unenforceable because of the indefiniteness of its terms. Given our disposition regarding the Statute of Frauds, it is unnecessary to decide that issue.

defendant used improper means which resulted in injury to plaintiff."

Improper means are those which are independently wrongful, notwithstanding the injury caused by the interference. They may be wrongful by reason of statutory or common law and include violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood. *Top Service Body Shop v. Allstate Ins. Co., supra,* 283 Or at 210.

■      As to improper means, the gist of the allegation is that Conklin induced Jenkins not to perform her agreement by offering to buy the property from her for more than she was then getting from Karban. However, Karban also alleges that Conklin knew of the written lease and the alleged oral modification, and that he agreed to indemnify, defend and hold her harmless from the claims of Karban for breach of the lease. Even though Karban alleges that Conklin induced Jenkins not to perform her agreement to lease the additional acreage, if there were a valid, enforceable agreement to do that, Conklin bought the property subject to whatever Jenkins' obligations under the lease or oral modification were.[5] There can be nothing improper about that; Jenkins had the right to sell, subject to Karban's rights, and Conklin had the right to buy, subject to those rights.

■      With respect to improper motive, Karban alleges facts that clearly show that Conklin's motive for purchasing the property was his environmental concern in preventing the land from being quarried. That motive is not an improper one. It also alleges, in conclusory terms, that Conklin acted with the motive and intent of harming Karban. In *Top Service Body Shop v. Allstate Ins. Co., supra,* the court held that, when the sole motive of the defendant was alleged to be a desire to harm the plaintiff, a cognizable claim was made. It also held that the plaintiff had failed to prove its claim, because the defendant had shown a legitimate business objective for discouraging its customers from getting repairs done at the plaintiff's body shop. It left open the question, however, of whether

---

[5] Unlike other cases involving intentional interference with contracts, the actor here, Conklin, did not interfere and walk away; he assumed whatever contract obligations existed and would be liable for their breach.

a claim can be sustained when the defendant's motive for interfering is mixed. Here, the facts alleged *by Karban* in its counterclaim and brief show that Conklin engaged in conduct on behalf of an environmental protection group that was opposed to the quarrying of rock on the property and that his motive was predominantly to protect the land in question from quarrying. Karban alleges a specific course of conduct engaged in by Conklin designed to protect that land, yet it makes only a single conclusory allegation that Conklin's motive was to injure Karban. If Karban was injured, its injury was only incidental to Conklin's prevention of quarrying by anyone. Taken as a whole, the pleadings fail to allege sufficient facts to show an improper motive on the part of Conklin. The claim for intentional interference with contractual relations was properly dismissed.

Finally, Karban contends that the trial court erred in awarding attorney fees to Conklin and Jenkins, relying on *Pickinpaugh v. Morton,* 268 Or 9, 519 P2d 91 (1974). There, the court held that, because awards of attorney fees in contract actions must be based on an agreement for fees in the contract being litigated, a party who succeeds in rescinding or otherwise avoiding enforcement of the contract cannot rely on the contractual attorney fees provision. It argues that, because Jenkins and Conklin successfully avoided enforcement of the oral contract, they are not entitled to attorney fees.

Here, the written lease provides that, "[i]f suit or action is instituted in connection with any controversy arising out of this lease, the prevailing party shall be entitled to recover * * * attorney fees." Because the actions by Conklin and Karban were instituted "in connection with a controversy arising out of" the written lease, and, unlike in *Pickinpaugh,* none of the parties seeks to rescind or otherwise render void the written lease, the prevailing parties are entitled to attorney fees for their defense of the breach of contract claims.[6]

Although the amount awarded is claimed to be excessive, the record supports it, *Willamette Prod. Credit v. Borg-Warner Acceptance,* 75 Or App 154, 706 P2d 577 (1985), *rev*

---

[6] Karban has not argued that any of the fees claimed by Conklin arose from either Conklin's undecided breach of contract claim against Karban or from Conklin's defense of the tort action.

*den* 300 Or 477 (1986), and it was within the trial court's discretion. *See MacLean & Associates v. American Guaranty Life,* 85 Or App 284, 297, 736 P2d 586, *rev den* 304 Or 55 (1987).

Affirmed.